**INTERSTATE COMMERCE COMMISSION, Plaintiff,**

**v.**

**V. S. C. WHOLESALE–WAREHOUSE CO., a corporation, Defendant.**

**Civ. No. 1–69–21.**

United States District Court,
D. Idaho, S. D.
Oct. 2, 1969.

Sherman F. Furey, Jr., U. S. Atty., District of Idaho, and William L. Harrison, Interstate Commerce Commission, for plaintiff.

Wayne L. Loveless, Salmon, Idaho, for defendant.

## MEMORANDUM of OPINION

FRED M. TAYLOR, Chief Judge.

The plaintiff brought this action for the purpose of seeking an injunction against the defendant for engaging in the interstate transportation of property for compensation without having a Certificate of Public Necessity and Convenience, permit, or other authority as required under and pursuant to the Interstate Commerce Act.

The parties waived trial before the court on the issues framed and submitted the cause to the court for its decision on a stipulation of facts and the pre-trial order. It appears from the record thus submitted to the court that the defendant V.S.C. Wholesale-Warehouse Company, an Idaho corporation, hereinafter referred to as V.S.C., is engaged in the warehousing and distribution of articles and furnishings to be installed in and used in the manufacture of mobile homes and travel trailers which includes appliances, chairs and tables, carpeting, water tanks, plywoods, water heaters and similar materials and furnishings. The defendant does not hold itself out to the general public as furnishing public warehousing services but rather serves as an agent for some forty different producers of the described furnishings which producers are located throughout the United States. About 95% of the merchandise warehoused with V.S.C. by these producers moves from the producers to the warehouse facilities by

common carrier, both rail and motor vehicle, with the freight charges prepaid by the producers. The balance of the merchandise warehoused by V.S.C. or about 5% thereof, is transported by it for compensation by means of motor vehicles leased and controlled by V.S.C. It is this transportation which is the subject matter of this litigation. It is stipulated between the parties that V.S.C. does not hold a Certificate of Public Necessity and Convenience as a common carrier or a permit as a contract carrier issued by the Interstate Commerce Commission authorizing V.S.C. to engage in the transportation of property in interstate commerce for compensation.

The facts as stipulated reveal that title to all merchandise, regardless of the means by which it is transported to V.S.C., remains in the producers at all times and that V.S.C. serves only as an agent for these producers in receiving and unloading incoming shipments, sorting and storing the merchandise, submitting periodic inventory accounts to the producers, and in many instances supplying delivery service to local manufacturers of mobile homes or travel trailers. When the local manufacturers require furnishings and materials they call an appropriate warehouse of V.S.C. in the area to obtain such furnishings and materials. The prices for the materials or furnishings are controlled by the producer thereof and the office of V.S.C. in the transaction is limited to preparing a release order, identifying the articles delivered out of the warehouse stock and the prices thereof. Such release order is then submitted to the producers of the merchandise selected who then bill the local manufacturer who then pays for the same directly to the producers. As compensation for its services and warehousing the merchandise, V.S.C. charges the producers a percentage of the dollar volume of sales. The defendant, in transporting a portion of the merchandise warehoused by it, uses two motor vehicles consisting of two tractors and two van-type semi-trailers. V.S.C. maintains this equipment, employs the drivers therefor and assumes all the expenses of operation. The two vehicles are utilized by V.S.C. in consolidating materials, supplies, and furnishings from various producers in the Los Angeles area of southern California, and transports such loads to its warehouse facilities in the area of Caldwell, Idaho. V.S.C. contends that the utilization of this equipment is necessary in order for it to maintain a sufficient inventory of some items which are in short supply or in order to meet anticipated emergency demands in the local area. All such merchandise so transported by V.S.C. is warehoused by it for the producers. V.S.C. charges each producer for such transportation in addition to its charges for warehousing. The charges made to the various producers for transportation varies from 2% to 3% of the dollar volume of the merchandise transported. The billing to the producer for such charges is referred to on the V.S.C. invoice as "Advance Warehouse Charges". These charges are paid by the producers and such revenue is accounted for in the books of V.S.C. as "Diesel Operations" separate and apart from its warehousing revenues.

It is also revealed from the facts as stipulated by the parties that in conjunction with the transportation of these materials, supplies and furnishings by V.S.C. from California to Idaho, it solicits and arranges for the transportation of agricultural commodities from Idaho to California for a limited number of agricultural producers. It is admitted that under the provisions of the Interstate Commerce Act the transportation of these products are exempt and not subject to the provisions of the Act. The revenue received from the transportation of such agricultural products is also shown on the books of V.S.C. as "Diesel Operations". The costs and expenses of the "Diesel Operations" are charged on the books of V.S.C. against the trucking receipts. The profit and loss statement of V.S.C. from November

1, 1966 to October 31, 1967, shows gross receipts from the "Diesel Operations" in the amount of $22,394.00 and costs and expenses in the amount of $22,562.00.

It is the contention of the plaintiff Interstate Commerce Commission, hereinafter referred to as Commission, that in this factual situation V.S.C. is in the business of transportation for hire which is separate and distinct from its warehousing business. The Commission further contends that V.S.C. has committed all the acts and assumed all the charstate commerce for which it has received an identifiable compensation comparable to the rates or fees charged by any authorized carrier for hire, and accordingly in the absence of any certificate, permit or other authority issued by the Commission, the transportation of said goods, wares, and merchandise by V.S.C. in interstate commerce is in violation of the Interstate Commerce Act, Part II, §§ 203(c), 206(a), and 209(a) (49 U.S.C. §§ 303(c), 306(a), and 309(a)).

On the other hand, the defendant contends that the challenged transportation is performed by it in the capacity of a private carrier and accordingly is not within the regulatory provisions of 49 U.S.C. §§ 306(a) and 309(a) relating to common and contract carriers. The defendant argues that the transportation in question is incidental to and in furtherance of its primary non-transportation business of warehousing; that the charges collected for such transportation are on a cost basis and not for the purpose of obtaining profit therefrom and are only incidental to and compliment the charges assessed for warehousing.

The sections of the Interstate Commerce Act applicable to a resolution of this case are:

Sections 206(a), 49 U.S.C. 306(a), and 209(a), 49 U.S.C. 309(a), requiring, respectively, a Certificate of Public Convenience and Necessity for operation as a common carrier, and Section 209(a), 49 U.S.C. 309(a), requiring a permit for operation as a contract carrier by motor vehicle.

Section 203(a) (14), 49 U.S.C. 303 (a) (14), which defines a common carrier by motor vehicle as:

"* * * any person which holds itself out to the general public to engage in the transportation by motor vehicle in interstate or foreign commerce of passengers or property or any class or classes thereof for compensation, whether over regular or irregular routes * * *".

Section 203(a) (15), 49 U.S.C. 303(a) (15), defining a contract carrier by motor vehicle as being:

"* * * any person which engages in transportation by motor vehicle of passengers or property in interstate or foreign commerce, for compensation (other than transportation referred to in paragraph (14) of this subsection and the exception therein), under continuing contracts with one person or a limited number of persons either (a) for the furnishing of transportation services through the assignment of motor vehicles for a continuing period of time to the exclusive use of each person served, or (b) for the furnishing of transportation services designed to meet the distinct need of each individual customer."

Section 203(a) (17) of the Act, 49 U.S.C. § 303(a) (17), which defines a private carrier as being:

"* * * any person not included in the terms 'common carrier by motor vehicle' or 'contract carrier by motor vehicle', who or which transports in interstate or foreign commerce by motor vehicle property of which such person is the owner, lessee, or bailee, when such transportation is for the purpose of sale, lease, rent, or bailment, or in furtherance of any commercial enterprise."

Section 203(c) of the Act, 49 U.S.C. § 303(c), which reads in pertinent part:

"Except as provided in section 202 (a), section 203(b), in the exception in section 203(a) (14), and in the second proviso in section 206(a) (1) [all of which exceptions are inapplicable to

the present proceedings], no person shall engage in any for-hire transportation business by motor vehicle, in interstate or foreign commerce, on any public highway or within any reservation under the exclusive jurisdiction of the United States, unless there is in force with respect to such person a certificate or a permit issued by the Commission authorizing such transportation, nor shall any person engaged in any other business enterprise transport property by motor vehicle in interstate or foreign commerce for business purposes *unless such transportation is within the scope, and in furtherance of a primary business enterprise (other than transportation) of such person."* (Emphasis supplied)

■ In determining the status of the defendant as a carrier under the facts of this case and the above quoted statutes, the three definitions set forth in § 203(a), supra, defining common, contract, and private carriers, should be read and construed together, in order to give effect to the fundamental rule of statutory construction that the Act should be construed as a whole. A. W. Stickle & Co. v. Interstate Commerce Commission, 128 F.2d 155 (10th Cir. 1942). In order to avoid reaching a conclusion as to the applicability of the definitions of "common" or "contract" carriers without ever having considered the definition of a "private" carrier, it appears to the court that the proper approach to a construction of the Act in the light of the facts before the court is to consider and apply each definition in the light of every other definition. Such an approach is suggested by the substance of Section 203(a) (17) in defining a "private carrier" as one "not a common or contract carrier," and is the approach adopted by the Commission in construing the statute. See L. A. Woitishek, Common Carrier Application, 42 M.C.C. 193 (1943).

■ In interpreting the definition of a private carrier as it applies here, the Commission and the courts have adopted and applied to the factual situation in each individual case the "primary business test" enunciated in Lenoir Chair Co., Contract Carrier Application, 51 M.C.C. 65 (1949), aff'd sub. nom. Brooks Transportation Co. v. United States, 93 F.Supp. 517 (D.C.) aff'd mem. 340 U.S. 925, 71 S.Ct. 501, 95 L.Ed. 668. The substance of that test is to the effect that if the primary business of an operator is the supplying of transportation for compensation, then the carrier status of the operator is established as that of a non-private carrier. If, on the other hand, the primary business of an operator is found to be some non-carrier commercial enterprise, then it must be determined whether the motor operations are in bona fide furtherance of the primary business or whether they are conducted as a related or secondary enterprise for which compensation is received.

The "primary business test" as set forth in the Lenoir Chair Co. case was subsequently codified in the Interstate Commerce Act by amendment in 1958 to § 203(c) thereof, which reads in pertinent part:

" * * * nor shall any person engaged in any other business enterprise transport property by motor vehicle * * * unless such transportation is *within the scope,* and *in furtherance,* of a primary business enterprise (other than transportation) of such persons." (Emphasis supplied.)

■ The purpose of the primary business test, as subsequently codified, was to eliminate various subterfuges whereby shippers and carriers attempted to avoid the provisions of the Act by conducting under the guise of private carriage transportation which was in fact carriage for hire. The existence of these subterfuges, the manner in which they are effected, and the clear legislative intent to correct and prevent such evasion of the Act by enacting the "primary business test" into statutory law are well detailed elsewhere, and need not be detailed here. See Red Ball Motor Freight, Inc. v. Shannon, 377 U.S.

311, 84 S.Ct. 1260, 12 L.Ed.2d 341 (1964); Church Point Wholesale Beverage Co. v. United States, 200 F.Supp. 508 (W.D.La.1961). It is sufficient to say that the effect of the amendment to § 203(c) is to modify the language of § 203(a) (17) as it related to transportation by the owner, lessee or bailee of property "in furtherance of any commercial enterprise". Transportation is not now to be regarded as in furtherance of any commercial enterprise if it serves only to yield additional revenues, or to achieve more optimum utilization of the equipment used in the non-carrier business. Rather, the language of the amendment now clearly indicates that to fall within the category of private carriage, the transportation must not only be "in furtherance of a primary business enterprise (other than transportation)" but also within the scope of that business. Both these tests must be satisfied. Church Point Wholesale Beverage Co. v. United States, *supra*.

The transportation of the materials and furnishings here involved would seem clearly to be in furtherance of V.S.C.'s non-transportation business of warehousing. It does not follow, however, that transportation of this nature and magnitude is within the scope of the defendant's warehousing business. The transportation activities now before the court go beyond that degree of carriage which might reasonably be deemed to be within the scope of a usual warehousing establishment. The fact that California producers alone are served lends credence to the contention of the Commission that the hauling of materials and furnishings to Idaho is not in bona fide furtherance of their warehousing activities, but is supplementary to the hauling of exempt commodities to California, and is a separate enterprise, which, while it may be in furtherance of the warehousing business, is not sufficiently incidental to that business to be within the scope thereof, as contemplated by § 203(c) of the Interstate Commerce Act. Moreover, the record is clear that some 95% of the stock warehoused by

V.S.C. is delivered to their warehouse by common carrier. There is no indication in the record that the remaining 5% carried by V.S.C. would be less efficiently delivered by authorized carriers. Further, if the transportation presently challenged were to be held to constitute private carriage, the defendant would not be precluded from expanding his existing operations to include additional routes or to transport greater volumes of merchandise.

The defendant's position is not improved by its contention that it is a bailee of the merchandise. Carriers for hire are normally bailees of the property entrusted to them for carriage. The fiduciary relationships created by the bailment for transportation are distinct and separate from those of warehousing. The duties and liabilities for which V.S.C. charges and collects a separately identifiable compensation are not the same duties and liabilities for which compensation is received for the warehousing service. Accordingly, the bailment to V.S.C. for transportation is no different than the usual bailment by a shipper to a carrier for hire, and is not a bailment within the meaning contemplated by the definition of a private carrier.

The court finds that the motor operations of V.S.C. are a distinct enterprise which is not within the scope of its warehousing business, and that the motor operations necessarily fail to qualify as private carriage under Section 203(a) (17) of the Interstate Commerce Act. A. W. Stickle & Co. v. Interstate Commerce Commission, *supra*.

It clearly appears from the facts that the defendant does not come within the definition of a common carrier in that it does not hold itself out to the general public to supply public warehouse services, nor is there any evidence that it holds itself out to the public generally to transport commodities of any class on its northbound haul from California to Idaho. The Commission does allege that defendant holds itself out to the public to transport "exempt" commodities to

points in California. By so arguing, it appears that the Commission is inferentially saying that V.S.C. is holding itself out to the public for the purpose of transporting the non-exempt materials and furnishings on the northbound trip. If this is the argument of the Commission, this court cannot agree. The southbound haul of the agricultural products is exempt under the provisions of the Interstate Commerce Act under § 203(b) (6), 49 U.S.C. § 303(b) (6) and the authority to transport such commodities is not challenged by the Commission in this action. In the circumstances of this case, the Commission has failed to show that V.S.C. has held itself out to the general public for the transportation of property with respect to the challenged northbound trips and that it is a common carrier within the meaning of § 203(a) (14), supra.

■ The Commission claims that the facts are sufficient to warrant a finding that the defendant is a "contract carrier by motor vehicle" within the meaning of § 203(a) (15) of the Interstate Commerce Act (49 U.S.C. § 303(a) (15), supra). The court agrees that the record is sufficient to warrant such a finding.

It is stipulated that the challenged transportation is of property in interstate commerce. The defendant's contention that the transportation is performed without profit to V.S.C. is without merit, since the element of profit is not necessary to constitute compensation. It is sufficient that the charges here involve reimbursement for expenses of operation. Shippers Cooperative Inc. v. Interstate Commerce Commission, 308 F.2d 888 (9th Cir. 1962). The record amply supports a finding that V.S.C. performed the transportation services for compensation within the meaning of the statute. It is also apparent from the record that the transportation for compensation was for a limited number of producers in California.

The section of the Act defining "contract carrier" requires that the Commission sustain its burden of proof of a contract, either express or implied, between the alleged carrier and the person providing the compensation for the carriage. Taylor v. Interstate Commerce Commission, 209 F.2d 353 (9th Cir. 1953). The stipulation of facts shows the transportation of the furnishings, the assessment of charges and the payment of these charges by the producers, which is ample to support a finding of a contract of carriage between V.S.C. and the producers receiving the service.

The court finds all the requisite elements of contract carriage sufficient to constitute the defendant V.S.C. a "contract carrier" within the meaning of Section 203(a) (15) of the Interstate Commerce Act. Since § 203(a) (17), supra, defining private carriers is only applicable to the extent that §§ 203(a) (14) and 203(a) (15) do not apply, the defendant is subject to the provisions of the Act requiring authority for the transportation of property in interstate commerce. Schenley Distillers Corp. v. United States, 326 U.S. 432, 66 S.Ct. 247, 90 L.Ed. 181 (1946); Shippers Cooperative, Inc. v. Interstate Commerce Commission, supra at 893, n. 9 (9th Cir. 1962).

■ The court concludes that the substance of the defendant's operation is the transportation of property in interstate commerce by motor vehicle for compensation under individual agreements or contracts entered into with the producers of the materials and furnishings transported. The provisions of the Interstate Commerce Act relating to motor vehicles are sufficiently broad and comprehensive to include within its scope all those who, regardless of the procedure or manner of operation involved, are in substance engaged in transporting property in interstate commerce for hire. B & C Truck Leasing, Inc. v. Interstate Commerce Commission, 283 F.2d 163 (10th Cir. 1960).

■ Since the defendant's operations in interstate commerce are conducted without proper authority, the defendant is in violation of the Interstate Com-

merce Act and should be enjoined from continuing such operations.

This Memorandum shall constitute the Findings of Fact and Conclusions of Law of the court.