**AMERICAN TRUCKING ASSOCIATION, INC., and Georgia Motor Trucking Association, Inc., Petitioners,**

v.

**INTERSTATE COMMERCE COMMISSION and United States of America, Respondents.**

No. 81–7092.

United States Court of Appeals, Eleventh Circuit.

April 5, 1982.

Nelson J. Cooney, Gen. Counsel, American Trucking Ass'n, Inc., Alan J. Thiemann, Washington, D. C., for petitioners.

Lawrence H. Richmond, Gen. Counsel, Laurence H. Schecker, I. C. C., Robert B. Nicholson, George Edelstein, Dept. of Justice, Washington, D. C., for respondents.

Keller & Heckman, Christine A. Meagher, Jonathan P. Levine, William H. Borghesani, Jr., Michael F. Morrone, Lillick, McHose & Charles, Harold E. Mesirow, Barbara M. Campbell, Washington, D. C., William A. Quinlan, Annapolis, Md., Billig, Sher & Jones, Terrence D. Jones, John C. White, Washington, D. C., for intervenors.

Before TUTTLE, HENDERSON and CLARK, Circuit Judges.

TUTTLE, Circuit Judge:

The petitioners seek review of several orders of the Interstate Commerce Commission ["the ICC" or "the Commission"] interpreting recent amendments to the Motor Carrier Act. Motor Carrier Act of 1980, 49 U.S.C.A. § 10524 (1981). The amendments extend exemption from ICC regulatory jurisdiction to include carrier services performed by subsidiary members of corporate families for the parent corporation or other affiliates.

## I.

In 1935 Congress passed the Motor Carrier Act to regulate the transportation industry in our country. The original Act set out three distinct types of motor carriers, common, contract, and private, each subject to a different set of regulations. The first two must obtain some type of certificate or permit from the ICC, whereas the latter may engage in carrier operations free of regulation by the ICC. See 49 U.S.C.A. §§ 10922, 10923 (1981).

A private carrier does not engage in for-hire carriage; it is typically a firm that hauls its own wares in self-owned or leased trucking equipment. Soon after passage of the 1935 Act, the courts fashioned what was called a "primary business test" to ascertain whether a particular firm could be properly labeled a private carrier and thus exempt from ICC jurisdiction. See Brooks Transportation Co., Inc. v. United States and Interstate Commerce Commission, 93 F.Supp. 517 (E.D.Va.1950), aff'd 340 U.S. 925, 71 S.Ct. 501, 95 L.Ed. 668 (1951). The test requires that the primary business of the carrier firm be something other than transportation, and that the motor operations involved are in bona fide furtherance of the primary (non-transportation) business of that firm. See Interstate Commerce Commission v. V.S.C. Wholesale Warehouse Co., 312 F.Supp. 542 (S.D.Id. 1969). In 1958 Congress codified the primary business test as follows:

(a) The Interstate Commerce Commission does not have jurisdiction under this subchapter over the transportation of property by motor vehicle where—

(1) the property is transported by a person engaged in a business other than transportation; and

(2) the transportation is within the scope of, and furthers a primary business (other than transportation) of the person.

The issue quickly arose whether a subsidiary member of a conglomerate corporation providing transportation services for the parent corporation or other affiliates was to be considered a private carrier and thus free of regulation, or a for-hire carrier requiring an ICC permit to engage in hauling operations. This practice of providing transportation services for affiliates in a corporate family is known as "compensated intercorporate hauling" [CIH]. In Schenley Distillers Corp. v. United States, 326 U.S. 432, 66 S.Ct. 247, 90 L.Ed. 181 (1946), the Supreme Court upheld a Commission ruling designating CIH as for-hire contract carrier services. Characterizing the carriage operations as services for compensation between two separate entities, the Court refused to exempt such services from ICC regulation. Id. at 436–37, 66 S.Ct. at 249.

Regardless of its statutory validity, the Schenley decision tended to produce inefficient carriage operations in corporate conglomerations. Trucks of one corporate affiliate transporting their own goods in one direction were prevented from hauling the goods of the parent corporation or another subsidiary in the other direction, and were thus forced to make the return trip empty. Furthermore, the management of the parent corporation could not set up a transportation subsidiary to provide hauling services for the entire corporate family. These inefficiencies became increasingly significant as the world's energy situation produced fuel shortages and fuel price increases.

To remedy this situation, in the summer of 1980, Congress enacted section 9 of the Motor Carrier Act, Pub.L.No.96–296, 94 Stat. 793 (codified at 49 U.S.C.A. §§ 10524(b)–(c) (1981). The express purpose of these amendments is, *inter alia*, to "promote competitive and efficient transportation services in order to ... (C) allow the productive use of equipment and energy resources." 49 U.S.C.A. § 10101(a)(7) (1981). Section 9 extends exemption from ICC jurisdiction to carriers engaged in CIH activities as follows:

(b) The Commission does not have jurisdiction under this subchapter over transportation of property by motor vehicle for compensation provided by a person who is a member of a corporate family for other members of such corporate family if—

(1) the parent corporation notifies the Commission of its intent or one of its subsidiaries' intent to provide the transportation;

(2) the notice contains a list of participating subsidiaries and an affidavit that the parent corporation owns directly or indirectly a 100 percent interest in each of the subsidiaries;

(3) the Commission publishes the notice in the Federal Register within 30 days of receipt; and

(4) a copy of the notice is carried in the cab of all vehicles conducting the transportation.

(c) In this section, "corporate family" means a group of corporations consisting of a parent corporation and all subsidiaries in which the parent corporation owns directly or indirectly a 100 percent interest.

49 U.S.C.A. §§ 10524(b)–(c) (1981). As will become apparent shortly, it is relevant to note here that the CIH exemption provisions immediately follow in the Code the primary business test provision of the earlier statute for private carriers cited above.

Soon after passage of the 1980 amendments, the ICC issued a notice of proposed rulemaking primarily to establish procedures by which corporate families can notify the Commission of their intention to engage in CIH activities. *See* 45 Fed.Reg. 45,526 (1980). In addition to the procedural guidelines, the Commission indicated its substantive interpretation of the 1980 amendments that parent corporations could establish subsidiary corporations solely for transportation purposes and still be exempt from ICC regulations pursuant to the CIH amendments. These procedural and substantive rules were promulgated in final form on December 24, 1980. *See* 45 Fed. Reg. 86,761 (1980). In the final rule the Commission also declared that individuals, partnerships, and other non-incorporated entities could engage in unregulated CIH activities pursuant to the amendments. *Id.* at 86,763.

## II.

The petitioners object to both of the Commission's substantive rulings contained in its final order. With respect to the issue of transportation-only subsidiaries, petitioners argue that both law and policy argue against granting CIH exemptions to such practices. Legally, the petitioners assert that sub-section 10524(b), dealing with exemption for CIH activities, should be read *in pari materia* with sub-section (a), thus incorporating the primary business test into the determination of whether a particular CIH activity is exempt. Under this view, a subsidiary corporation set up solely to perform hauling services for the parent would fail the test and would therefore not be exempt from ICC regulation. From a policy standpoint petitioners point out that to allow large conglomerate corporations to take in-house their transportation business by setting up transportation-only subsidiaries would strike a severe anti-competitive blow to the private carrier business across the nation. Petitioners assert that such could not have been Congress' intent.[1]

---

1. The petitioners also object to the ICC final rule on the ground that the Commission based its order on a clearly mistaken point of law. In

the interim rule the Commission indicated that, "In view of the change made by Congress in the definition of private carriers in 49 U.S.C.

With respect to the issue of individuals, partnerships, and other non-incorporated entities, the petitioners take the view that the statute does not extend the exemption to anyone other than incorporated parent and subsidiary entities. The petitioners assert that the language of this statute clearly favors their interpretation.[2]

### III.

For the reasons that follow, we find that the Commission's view must be upheld as to the issue of transportation-only subsidiaries, whereas on the issue of non-incorporated entities, the ICC rule must be overturned.

■ Both the statutory language and the legislative history of the 1980 amendments to the Motor Carrier Act convince us that a corporation may set up its own subsidiary for the sole purpose of providing transportation for itself and its affiliates and still claim exempt status as CIH carriers under sub-section 10524(b). Sub-section (b) does not by its terms incorporate the primary business test language expressly set out in sub-section (a). It does not refer to the test set out in sub-section (a); indeed, it does not refer at all to sub-section (a). The two sections are not joined by a conjunction of any kind. Even the most liberal principle of statutory construction would force us to read sub-section (b) as exempting from ICC jurisdiction any CIH activity being performed in accordance with the other terms of the sub-section, regardless of whether the entity performing it engages in transportation as its primary, or even its only business.

Looking behind the words of the statute, we cannot find any indication to the contrary in the legislative history. Neither the House nor the Senate reports even mention the primary business test of sub-section 10524(a) in relation to the CIH amendments. Yet we must assume Congress was aware of the possibility of incorporating the test limitations into sub-section (b) by virtue of the test's existence in sub-section (a). Surely if the legislators had meant to limit sub-section (b) in the manner suggested by petitioners, they would have at some point in their deliberations seen fit to inform the Commission and the Judiciary of their intentions in a manner more explicit than the mere juxtaposition of the new section to an old one that is so limited. Lacking any indication whatsoever of such a purpose, we must conclude that it only exists as an unfounded assertion in the petitioner's briefs.

Policy considerations do not persuade us that the spirit of the law is not at one with its language. We must assume that Congress determined that, on balance, the public interest is better served by the promotion of more energy-efficient modes of transporting the Nation's commerce than by protecting the competitive interests of the private trucking industry. If those interests are so important to the Nation as a whole, we must depend upon the capacity of our democratic system eventually to alter the course Congress has thus far chosen.

■ Turning to the issue of non-incorporated entities, we are similarly struck by the express language of the statute. Un-

---

10102[13], we do not believe the legislative language precludes a subsidiary's being specifically established for this purpose [the purpose of providing CIH services]...." 45 Fed.Reg. at 45,527 (1980). In fact, Congress decided to drop from the final bill a proposed amendment to the definition of private carrier. We feel it unnecessary to address this objection at length, however, in light of the fact that the Commission did not make this same mistake in its final order. Instead, the Commission gave several other reasons for its determination that transportation-only subsidiaries should be allowed exemption from ICC jurisdiction for CIH activities.

2. The petitioners also raise a third issue in their briefs on appeal, namely, whether a corporation normally engaged in regulated carriage services may "mix" this practice with that of providing non-regulated CIH services for an affiliate corporation. The same issue has been litigated and decided in this Circuit in the case of *Mercury Motor Express v. United States*, 648 F.2d 315 (5th Cir. 1981). In that case, this Court upheld the Commission's ruling that "mixing" of private and for-hire services did not violate the Motor Carrier Act. The petitioners concede that this case is dispositive of their third objection on appeal.

certain though we may be as to the stakes involved in this issue,[3] the statutory language pertaining to the question leaves no room for doubting that only incorporated entities may receive exemption for CIH activities under sub-section (b). Sub-section (b) refers to "a member of a corporate family." 49 U.S.C.A. § 10524(b) (1981). Sub-section (c) expressly defines "corporate family" as a "group of corporations." The language clearly precludes an interpretation that would permit any entity other than a corporate one to receive exemption for CIH activities. Indeed, our assessment of the statute on this point might be best expressed in the words of an old doctrine in tort law: *res ipsa loquitur.*

REMANDED.

---

**3.** None of the three intervening parties to this suit, representing various interests of the trucking industry, expressed an opinion on this second issue. The record does not indicate the extent to which non-incorporated entities have sought or would seek exemption for CIH activities pursuant to the Commission's final rule on this issue.