[No. 55795–1. En Banc. April 6, 1989.]

INLAND EMPIRE DISTRIBUTION SYSTEMS, INC., *Appellant,* v. THE UTILITIES AND TRANSPORTATION COMMISSION, ET AL, *Respondents.*

*Clarence M. George* and *Esposito, Tombari & George, P.S.,* by *Richard M. George,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Robert D. Cedarbaum, Assistant,* for respondent State.

*Henry C. Winters* and *Bundy, Meyer & Home,* for respondents Taylor–Edwards Warehouse and Transfer Co., et al.

DOLLIVER, J.—Plaintiff Inland Empire Distribution Systems, Inc. (Inland) is a closely held Washington corporation which operates and maintains a public warehouse and dry

storage facility in the Spokane Industrial Park. Inland warehouses goods for approximately 80 different producers and manufacturers located throughout the United States. Approximately 99 percent of the goods are received from out of state, delivered by rail or motor carrier, and consigned directly to the warehouse. Inland does not require or request the ability to transport inbound shipments to the warehouse.

Of the 50 to 100 tons of merchandise received weekly, 85 to 90 percent is distributed in Spokane County. Inland has an average of 40 to 60 outbound shipments per day. Inland's clients usually leave the transportation arrangements of outgoing shipments to Inland. In arranging the transportation of intrastate shipments, Inland has used various motor common carriers, including two of the additional respondents, Taylor–Edwards Warehouse and Transfer Company of Washington, Inc. (Taylor–Edwards) and Jim's Transfer, Inc. (Jim's Transfer).

On March 27, 1985, Inland filed with defendant, the Washington Utilities and Transportation Commission (WUTC), an application for a common carrier permit under RCW 81.80 for authorization to transport "General Freight between points in the city of Spokane and points within 25 miles thereof, restricted to traffic originating at or destined to the warehouse facilities of Inland Empire Distributions Systems, Inc." Inland seeks transportation ability so as to decrease the effect of back solicitation from other warehouses who have common carrier permits, to be more competitive with such other warehouses, and to secure control of the deliveries to ensure timeliness. Inland also wants the ability to backhaul unsold consigned goods from the wholesalers to the warehouse for pickup by its customers. It is estimated the income from the proposed transportation activities would be 2 to 3 percent of Inland's total business.

Protests were made to the application by Taylor–Edwards, Jim's Transfer, and Grimmer Transfer and Storage, Inc. (Grimmer) (jointly referred to as additional

respondents), and Bekins Moving and Storage. The additional respondents operate warehouse facilities in the Spokane area and all hold common carrier permits. On June 26, 1985, Inland was granted a temporary common carrier permit.

On July 9 and 10 and September 4 and 5, 1985, a hearing was held before the administrative law judge in Spokane. On December 9, the proposed order (M.V. 133136) was filed denying the application. Relying on *ICC v. V.S.C. Wholesale–Warehouse Co.*, 312 F. Supp. 542 (D. Idaho 1969), the administrative law judge ruled the transportation for which Inland requested authority was not private carriage under RCW 81.80.010(6) and denied the application for a common carrier permit pursuant to RCW 81.80.070. The protest of Bekins Moving and Storage was dismissed for failure to appear. The WUTC affirmed the proposed order and denied Inland's petition for reconsideration.

On November 13, 1986, Inland appealed to the Spokane County Superior Court. The parties stipulated that Inland's temporary permit would continue in effect until further order of the court. The Superior Court affirmed the WUTC order in June 1988. Inland appealed to the Court of Appeals, Division Three, which certified the following questions to this court:

(1) Did the WUTC err in holding Inland's proposed transportation activities would not be exempt under RCW 81.80.010(6) as a private carrier, but would constitute motor common carrier operation and thus requiring a permit?

(2) Was WUTC's decision to deny Inland a common carrier permit, on the basis it was not in the public interest and not required as a convenience and necessity to the public, clearly erroneous in view of the entire record?

This court accepted certification on January 3, 1989.

I

■ Review of an agency final decision in a contested case is controlled by the administrative procedure act

(APA). RCW 34.04.010(3), .130. The APA establishes the scope of review of WUTC actions upon applications for motor carrier permits. *See Northern Pac. Transp. Co. v. State Utils. & Transp. Comm'n,* 69 Wn.2d 472, 477, 418 P.2d 735 (1966); RCW 34.04.130(6). The review is on the entire record of the administrative tribunal, not of the Superior Court. *Franklin Cy. Sheriff's Office v. Sellers,* 97 Wn.2d 317, 324, 646 P.2d 113 (1982), *cert. denied,* 459 U.S. 1106 (1983). The construction of a statute is a question of law reviewed de novo under the error of law standard with a heightened degree of deference given to the agency's interpretation when the statute is within the agency's field of expertise. *See Green River Comm'ty College Dist. 10 v. Higher Educ. Personnel Bd.,* 107 Wn.2d 427, 438, 730 P.2d 653 (1986) (citing *Sellers,* at 325–26).

Inland challenges the WUTC's interpretation of "private carrier" under RCW 81.80.010(6). The WUTC is the agency charged with the administration of RCW 81.80. RCW 81.80.330. Therefore, we review the WUTC's interpretation of private carrier under the error of law standard giving deference to the agency's construction.

The Legislature defined private carrier as follows:

A "private carrier" is a person who transports by his own motor vehicle, with or without compensation therefor, property which is owned or is being bought or sold by such person, or property of which such person is the seller, purchaser, lessee, or bailee where such transportation is *incidental to and in furtherance of some other primary business* conducted by such person in good faith.

(Italics ours.) RCW 81.80.010(6). The WUTC defined incidental as "a part of or within the scope of". Relying on *ICC v. V.S.C. Wholesale–Warehouse Co.,* 312 F. Supp. 542 (D. Idaho 1969), the WUTC found that bailments for storage and bailments for transportation are separate and distinct types of bailments and concluded that the transportation here is not incidental to the primary business of warehousing.

Inland contends the modern business of warehousing involves delivery of stored goods to customers and that transportation of outgoing shipments from a public warehouse solely for warehouse customers is incidental to and in furtherance of the primary business of warehousing. Inland also relies on the *V.S.C.* case to support its position.

■■ There is no Washington case law interpreting RCW 81.80.010(6). The *V.S.C.* case is the most closely analogous case because it involves the characterization of transportation by a warehouse. The court in *V.S.C.* interpreted the Interstate Commerce Act and, while federal decisions are not controlling, they are persuasive authority when construing state acts which are similar to the federal act. *See Green River*, at 432. The federal statute exempts as private carriage transportation which is "within the scope, and in furtherance, of" a primary business enterprise. This language was found in former 49 U.S.C. § 303(c) and was reenacted as part of 49 U.S.C. § 10524(a) (1982).

The *V.S.C.* case involved a private warehouse seeking exemption from regulation to transport merchandise from California to its warehouse in Idaho. The transportation at issue constituted 5 percent of the inbound shipments to the warehouse; the other shipments were moved by the producers to the warehouse by common carrier. As part of the transportation of the merchandise from California to Idaho, V.S.C. solicited transportation of exempt agricultural products from Idaho to California. The court in *V.S.C.* held the transportation by the warehouse was not private carriage.

Plaintiff asserts the holding of *V.S.C.* should be limited to its facts arguing the court held only that the specific backhaul in question went beyond the degree of carriage which is reasonably associated with the usual warehousing business.

The WUTC argues the holding in *V.S.C.* is broader and reflects the general principle that transportation by a warehouse operator is not private carriage. In *Interpretation— Intercorporate Hauling*, 132 M.C.C. 736, 739 (1981), the

Interstate Commerce Commission (ICC) agreed that *V.S.C.* was controlling authority for this proposition stating that warehouses have generally been considered unable to use private carriage to transport traffic of their patrons.

Plaintiff cites two ICC cases supporting its position that transportation by bailees can be private carriage. *See William F. Endress, Inc., Common Carrier Application,* 9 Fed. Carr. Cas. ¶ 32,739 (ICC 1953); *Benjamin L. Klein Contract Carrier Application,* 43 M.C.C. 451, 456 (1944). While ICC interpretations of federal statutes similar to state statutes are persuasive authority, they are not controlling. *See Black Ball Freight Serv., Inc. v. State Utils. & Transp. Comm'n,* 74 Wn.2d 871, 874, 447 P.2d 597 (1968). Additionally, neither of the cases cited by Inland involved bailments for storage. In both cases, the property was received by the applicant for the purpose of performing work on the property. Klein's principal business was the manufacture of dresses. Endress received goods for freezing and subsequent storage. The transportation involved in these cases was a part of the service performed for the customer.

These cases are more clearly related to a recent WUTC case, In re Crosby & Overton, App. P–66968 (Order M.V. 130721) (October 1984). There, the applicant was a specialist in environmental and commercial cleaning. The cleaning was done at various locations, where spills occurred or where machinery needed cleaning. An essential product of the cleaning was the containment of sometimes hazardous wastes in varying volumes, often in the applicant's specialized vehicles. In the words of the WUTC final order in Inland:

> There, the Commission ruled that the transportation of the contained wastes was merely incidental to and in furtherance of the cleaning processes, which required specialized skill and at times specialized vehicular equipment. An indication of the nature of transportation as incidental to the basic purpose of the applicant was the potential need to transfer the sometimes hazardous materials from one specialized vehicle to another merely for transportation if the application were denied.

Here, no such problem exists. The transportation is discrete and different from storage. Transportation is not incidental to storage but is a separate transaction. Any transportation company is able to provide the service with equal facility. The transportation here does not constitute private carriage under RCW 81.80.010(6).

RCW 81.80.010(6) might reasonably be interpreted to allow a certain degree of private carriage by a bailee whose primary business is warehousing. However, the statute could just as reasonably be interpreted to exclude warehousers from being private carriers because bailments for transportation are not a part of or "incidental" to bailments for storage. Given two reasonable interpretations of a statute, we must defer to the expertise of the agency charged with the administration of that statute. *See Green River Comm'ty College Dist. 10 v. Higher Educ. Personnel Bd.,* 107 Wn.2d 427, 438, 730 P.2d 653 (1986).

In addition to being contrary to the interpretation of the WUTC, for us to allow transportation to and from warehouses to be exempt as private carriage would constitute a substantial deregulation in this area. While the record reflects that back solicitation is a problem for plaintiff, the deregulation plaintiff urges should more properly be sought through legislative amendment rather than judicial action. *See* RCW 81.80.020 delineating legislative policy. We hold that RCW 81.80.010(6) does not exempt as private carriage transportation to and from a warehouse for warehouse customers.

## II

Inland challenges the WUTC's decision to deny Inland a common carrier permit. The WUTC is given the authority to grant or deny common carrier permits under the following standard:

A permit or extension thereof shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found that the applicant is fit, willing, and able properly to perform the services proposed and conform to the

> provisions of this chapter and the requirements, rules and regulations of the commission thereunder, and that such operations will be consistent with the public interest, and, in the case of common carriers, that the same are or will be required by the *present or future public convenience and necessity,* otherwise such application shall be denied.

(Italics ours.) RCW 81.80.070. Inland contends the WUTC findings of fact are clearly erroneous in view of the entire record. *See Franklin Cy. Sheriff's Office v. Sellers,* 97 Wn.2d 317, 646 P.2d 113 (1982), *cert. denied,* 459 U.S. 1106 (1983). When reviewing issues of fact, the court must search the entire record for evidence supportive and contrary to the agency's findings. *Sellers,* at 324. The court can declare an agency finding to be clearly erroneous "'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Sellers,* at 324 (quoting *Ancheta v. Daly,* 77 Wn.2d 255, 259–60, 461 P.2d 531 (1969)).

■ Initially, Inland argues that more weight should have been given to the testimony of Bert Ewers, the president of Inland, and Les Wilson, Inland's dispatcher. Inland characterizes the testimony as outlining the necessity of a warehouse operator to control the delivery of goods to its warehouse clients. The WUTC found this testimony to be self–serving and biased and would be considered only as corroboration for the testimony of the other supporting shippers. Inland argues the WUTC usually allows the testimony of applicants to support their own applications. In this case, the testimony was allowed. The only real question is whether the WUTC had the discretion to attach little weight to that testimony. Administrative tribunals have the discretion to evaluate the evidence presented; this evaluation will not be reconsidered on appeal. *See Black Ball,* at 875; RCW 34.04.100.

Inland further argues the WUTC ignored the testimony in the record which corroborated the testimony of Ewers

and Wilson. However, in addition to the testimony of Ewers and Wilson, the findings of fact include testimony from the supporting shippers and the additional respondents which indicate that warehouses without transportation are at a disadvantage, are subject to back solicitation, and are not as economically appealing to shippers. Obviously, the record is more detailed than the findings of fact as to specific instances and exact language used by the witnesses. However, the findings do recognize the testimony which corroborated that of Ewers and Wilson.

Next, Inland argues the WUTC was in error in not considering the ability of Inland to furnish transportation to its customers as a factor in determining public convenience and necessity. RCW 81.80.070 requires a finding that the applicant is "fit, willing, and able properly to perform the services proposed . . ." The WUTC final order specifically found Inland had the financial resources and the suitable equipment to conduct the proposed operations. Significantly, the application for a common carrier permit was not denied because Inland was unable to perform the proposed transportation. Rather, it was denied because the WUTC found that a permit was not required by the public convenience and necessity.

Lastly, Inland argues the WUTC failed to give consideration to contradictory evidence and inferences therefrom in denying the application. The WUTC has the discretion in deciding whether applicants have met their burden of proving that additional service is required by the public convenience and necessity. *See Black Ball,* at 875; *see also General Tel. Co. of the Northwest, Inc. v. Utilities & Transp. Comm'n,* 104 Wn.2d 460, 475, 706 P.2d 625 (1985). The WUTC agreed the testimony indicated the need for common carriers would increase in the future, but found the available carriers were ready, willing, and able to handle the increases in traffic. The testimony of the supporting shippers indicating a desire for Inland to have transportation services was duly noted by the Commission. Neither the testimony cited by Inland nor other parts of the record

contradict the WUTC findings of fact to the extent that a definite and firm conviction is held that a mistake has been made. We hold the WUTC findings are not clearly erroneous in view of the entire record.

The Spokane County Superior Court order affirming the WUTC final order ruling Inland was not exempt from regulation as a private carrier under RCW 81.80.010(6) and denying Inland's application for a common carrier permit is affirmed.

CALLOW, C.J., and UTTER, BRACHTENBACH, DORE, PEARSON, ANDERSEN, DURHAM, and SMITH, JJ., concur.