[No. 33955-2-II. Division Two. December 5, 2006.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES BRADLEY ALLENBACH, *Appellant*.

*Steven W. Thayer* and *Kyra K. Lafayette*, for appellant.

*Arthur D. Curtis, Prosecuting Attorney*, and *Michael C. Kinnie, Deputy*, for respondent.

¶1 HUNT, J. — James Allenbach appeals his forgery and second degree identity theft convictions. He argues that (1) the identity theft definition statute, RCW 9.35.005(1), is unconstitutionally vague in its definition of "financial information"; (2) the trial court erred in admitting evidence of Allenbach's drug habit and drug debt as his reason for presenting the forged check; (3) the trial court erred by instructing the jury on alternative means of committing identity theft; (4) there was insufficient evidence to support both convictions; and (5) he had ineffective assistance of counsel. We affirm.

## FACTS

### I. FORGERY AND IDENTITY THEFT

¶2 James Allenbach presented a check for $450 at the Washington Mutual Bank in Clark County. The check was drawn on the account of Charles Brown, payable to Allenbach. Brown had never received his new checks in the mail, he had not written a previously cashed check from this new batch of checks, he did not know or authorize Allenbach to use his checks, and he had never written any check payable to Allenbach, including this one. Along with the check, Allenbach presented two forms of identification—his driver's license and his credit card.

¶3 Because of the amount, the teller attempted to verify the maker's signature on the check against the account holder's signature on file with the bank, noticed that the signatures did not match, and informed Allenbach that she was going to call Brown to verify the check. Allenbach appeared nervous. According to Allenbach, he told the teller that the check maker was in a car in the parking lot and that he would retrieve him to clear up the situation. While the teller was on the phone with Brown, Allenbach (1) left the bank; (2) went outside to a parked car; (3) began conversing with a person in the car, who, according to Allenbach, was a drug dealer named "Hector"; and (4) left in the car shortly thereafter, without returning for the check, his driver's license, or his credit card, all of which he left behind with the teller in the bank. The teller wrote down the license plate number.

¶4 Brown confirmed to the teller that he had not written the check to Allenbach, nor did he know Allenbach. The teller phoned the police. When Clark County Sheriff's Detective Sample and Deputy Kendall arrived, they collected the check, Allenbach's driver's license, and his credit card from the teller, and the license plate number of the car in which Allenbach had driven away. In addition to Brown's account number, the check contained his personal information, including his name and address.

¶5 Sample and Kendall went to Allenbach's home to talk to him about the incident. Although he appeared nervous and "jittery," Allenbach agreed to talk with them. Allenbach admitted that he had been at the bank earlier that day and had left behind his credit card, his driver's license, and the check. He explained that (1) he had received the check from "Hector," an acquaintance and former coemployee; (2) he was cashing the check for Hector; (3) he had previously cashed a similar check for Hector at a different Washington Mutual Bank branch without incident; (4) he was cashing the checks for Hector (a) because Hector had trouble with his identification (Allenbach's initial explanation), and (b) to pay off a drug debt he owed to Hector for his metham-

phetamine habit (Allenbach's later explanation);[1] and (5) he did not know how to contact Hector, but Hector usually contacted him near the Wal-Mart on Highway 99. The officers then left Allenbach's home[2] to investigate Hector.

¶6 Unsuccessful in locating Hector, Sample and Kendall returned to Allenbach's home after learning that Allenbach had cashed a different check for $425, also drawn on Brown's account, at another Washington Mutual Bank branch. Allenbach (1) met them at the door, (2) instantaneously stated that he and his wife wished to apologize and to repay Brown the $425 drawn from Brown's account with the earlier check, and (3) told the officers he did not know where Hector lived but he had notified Hector that he (Allenbach) would no longer be purchasing drugs from Hector or communicating with him.

¶7 According to Allenbach's later trial testimony, after he left the bank (1) he had learned from Hector that the check was bad, (2) Hector had threatened him, and (3) he did not tell the officers where to find Hector because Hector was a drug dealer and he (Allenbach) feared for the safety of himself and his family.

## II. PROCEDURE

¶8 The State charged Allenbach with one count of forgery, RCW 9A.60.020(1)(a), (b), and one count of second degree identity theft, RCW 9.35.020(3). The trial court denied Allenbach's motion to suppress. Both attorneys took active roles in drafting the jury instructions. Neither objected to any jury instruction that the trial court gave. The jury convicted Allenbach as charged. The trial court denied his motion for a new trial and arrest of judgment.

¶9 Allenbach appeals.

---

[1] The officers' and Allenbach's testimonies conflicted as to whether Allenbach admitted that his debt was for purchasing drugs from Hector or whether drug-dealer Hector had merely offered drugs to Allenbach.

[2] The officers did not arrest Allenbach at this time.

## ANALYSIS

### IDENTITY THEFT STATUTES

¶10 Allenbach argues that RCW 9.35.005's definition of "financial information" is unconstitutionally vague[3] as applied because it does not apprise citizens with fair warning of what conduct is prohibited.[4] We disagree.

### A. Standard of Review

 ¶11 Construction of a statute is a question of law, which we review de novo under the error of law standard. *City of Pasco v. Pub. Employees Relations Comm'n*, 119 Wn.2d 504, 507, 833 P.2d 381 (1992); *Inland Empire Distrib. Sys., Inc. v. Utils. & Transp. Comm'n*, 112 Wn.2d 278, 282, 770 P.2d 624 (1989). The party asserting a vagueness challenge bears the heavy burden of proving the statute's unconstitutionality beyond a reasonable doubt. *City of Spokane v. Douglass*, 115 Wn.2d 171, 177, 795 P.2d 693 (1990). The challenger overcomes the presumption of the statute's constitutionality only in exceptional cases. *City of Seattle v. Eze*, 111 Wn.2d 22, 28, 759 P.2d 366 (1988).

 ¶12 The due process vagueness doctrine serves two important purposes: "first, to provide citizens with fair warning of what conduct they must avoid; and second, to protect them from arbitrary, ad hoc, or discriminatory law enforcement." *State v. Halstien*, 122 Wn.2d 109, 117, 857 P.2d 270 (1993). Under the due process clause,[5] a criminal prohibition is void for vagueness if it fails either (1) to define the offense with sufficient definiteness such that

---

[3] Although Allenbach asserts generally that "RCW 9.35.005 is unconstitutionally vague as applied in this case," his vagueness arguments in his brief and at oral argument focus exclusively on only one of several statutory definitions of "financial information"—"account numbers and balances," RCW 9.35.005(1)(a)— the specific portion of the statute under which he was convicted. Br. of Appellant at 20.

[4] Allenbach does not, however, assert that the charging statute, RCW 9.35.020, is also vague.

[5] U.S. CONST. amend. V.

ordinary people can understand what conduct is prohibited or (2) to provide ascertainable standards of guilt to protect against arbitrary enforcement. *Douglass*, 115 Wn.2d at 178.

¶13 We do not look at the language of a challenged statute in a vacuum; rather, we consider its entire context. A statute is not unconstitutional if the general area of conduct against which it is directed is made plain. Nonetheless, strict specificity is not required. The exact point where actions cross the line into prohibited conduct need not be predicted so long as persons of ordinary intelligence can understand a penal statute, notwithstanding some possible areas of disagreement. *City of Seattle v. Webster*, 115 Wn.2d 635, 643, 802 P.2d 1333 (1990), *cert. denied*, 500 U.S. 908 (1991).

## B. RCW 9.35.005—Identity Theft

¶14 RCW 9.35.020 proscribes as identity theft: knowingly obtaining, possessing, using, or transferring a means of another's identification or financial information with the intent to commit or to aid any crime.[6] The chal-

---

[6] RCW 9.35.020 provides:

(1) No person may knowingly obtain, possess, use, or transfer a means of identification or financial information of another person, living or dead, with the intent to commit, or to aid or abet, any crime.

(2) Violation of this section when the accused or an accomplice uses the victim's means of identification or financial information and obtains an aggregate total of credit, money, goods, services, or anything else of value in excess of one thousand five hundred dollars in value shall constitute identity theft in the first degree. Identity theft in the first degree is a class B felony punishable according to chapter 9A.20 RCW.

(3) Violation of this section when the accused or an accomplice uses the victim's means of identification or financial information and obtains an aggregate total of credit, money, goods, services, or anything else of value that is less than one thousand five hundred dollars in value, or when no credit, money, goods, services, or anything of value is obtained shall constitute identity theft in the second degree. Identity theft in the second degree is a class C felony punishable according to chapter 9A.20 RCW.

(4) A person who violates this section is liable for civil damages of one thousand dollars or actual damages, whichever is greater, including costs to repair the victim's credit record, and reasonable attorneys' fees as determined by the court.

lenged statute, RCW 9.35.005(1), defines "financial information" as follows:

> (1) "Financial information" means any of the following information identifiable to the individual that concerns the amount and conditions of an individual's assets, liabilities, or credit:
>
> (a) Account numbers and balances;
>
> (b) Transactional information concerning an account; and
>
> (c) Codes, passwords, social security numbers, tax identification numbers, driver's license or permit numbers, state identicard numbers issued by the department of licensing, and other information held for the purpose of account access or transaction initiation.

RCW 9.35.005(1) thus provides a clear list of specific types of information that qualify as "financial information" for purposes of committing the crime of identity theft under RCW 9.35.020.

¶15 Allenbach argues that the RCW 9.35.005(1)(a) phrase "account numbers and balances" is insufficient to apprise citizens that a blank check qualifies as "financial information" for purposes of identity theft.[7] We disagree.

¶16 First, in our view, reading the plain language of RCW 9.35.005(1) subsection (a), a reasonable person of ordinary intelligence would understand that a blank check,

---

(5) In a proceeding under this section, the crime will be considered to have been committed in any locality where the person whose means of identification or financial information was appropriated resides, or in which any part of the offense took place, regardless of whether the defendant was ever actually in that locality.

(6) The provisions of this section do not apply to any person who obtains another person's driver's license or other form of identification for the sole purpose of misrepresenting his or her age.

(7) In a proceeding under this section in which a person's means of identification or financial information was used without that person's authorization, and when there has been a conviction, the sentencing court may issue such orders as are necessary to correct a public record that contains false information resulting from a violation of this section.

[7] Allenbach also argues that the statute is vague because (1) neither the trial court nor the attorneys could understand the statute and (2) there are no clear, standard jury instructions associated with this statute. These arguments fail because they do not prove the statute's vagueness beyond a reasonable doubt.

which bears the account number and owner's name, qualifies as "financial information." Second, reading subsection (a) in context, we note that RCW 9.35.005(1) includes the following other definitions of "financial information": "[t]ransactional information concerning an account," subsection (b), and "other information held for the purpose of account access," listing multiple specific examples. Thus, even in the unlikely event that a person would not understand the proscribed conduct from subsection (a) alone, certainly a reasonable person would understand the proscribed conduct from reading all three RCW 9.35.005(1) definitions of "financial information" together with RCW 9.35.020, which defines the crime of identity theft with specific reference to possession or use of another's "financial information."

¶17 Third, and most importantly, we adhere to the well-settled rule that we must construe the law to avoid an absurd result. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003). In essence, Allenbach argues that in order to convict him under the RCW 9.35.005(1)(a) definition of "financial information," the State had to prove that he criminally possessed *both* the account number and the bank account balance, not merely the account number on a blank check. In our view, it would be an absurd construction of the statute and the legislature's intent in criminalizing identity theft were we to read RCW 9.35.005(1)(a), as Allenbach suggests, such that a person is guilty of identity theft by possessing, obtaining, using, or transferring another's check with intent to commit a crime *only* if that person also has in his possession the account's balance.

¶18 We hold, therefore, that Allenbach has failed to meet his burden of proving beyond a reasonable doubt that RCW 9.35.005(1)(a) is unconstitutionally vague either as applied or otherwise.

¶19 Affirmed.

¶20 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder

shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

HOUGHTON, C.J., and VAN DEREN, J., concur.