[No. 30191-8-I. Division One. June 28, 1993.]

GEORGE RUSSELL, *Appellant,* v. THE DEPARTMENT OF HUMAN RIGHTS, ET AL, *Respondents.*

*Allan W. Munro* and *Bovy, Wampold & Munro,* for appellant.

*Mark H. Sidran, City Attorney,* and *Ada Ko, Assistant,* for respondents.

PEKELIS, J. — George Russell appeals from an order on writ of review in which the trial court affirmed the decision of the Seattle Department of Human Rights and a hearing examiner that Russell and First Impressions Printing, Inc., had discriminated against Doris Slumkoski. We affirm.

I

On March 27, 1985, Doris Slumkoski filed a verified employment charge with the Seattle Department of Human Rights (Department), alleging that her former employer, First Impressions Printing, Inc. (First Impressions), engaged in unlawful employment practices against her. The charge alleged in part that First Impressions maintained a discriminatory work environment that included racial and sexual slurs, and that Slumkoski was discharged due to race and sex.

On April 2, 1985, the Department sent First Impressions owner George Russell a notice that a charge had been filed alleging an unfair employment practice pursuant to Seattle's Fair Employment Practices Ordinance, Seattle Municipal Code (SMC) 14.04. The Department thereafter conducted an investigation of the charge.

Meanwhile, in March 1987, First Impressions was administratively dissolved. On February 29, 1988, the Department sent notice, along with a determination and offer to conciliate, to Russell and First Impressions[1] stating that the Department had found reasonable cause to believe that an

---

[1] The Department continued to refer to "First Impressions" as a separate entity in correspondence, although the corporation no longer existed.

unfair labor practice had occurred as alleged by Slumkoski. Apparently, there were efforts made by the Department to reconcile the matter. On February 5, 1990, the Department sent a notice of failure to conciliate to George Russell as owner of First Impressions, stating that the matter would be referred to the Seattle City Attorney's office for prosecution.

On June 19, 1990, a Seattle city attorney filed a complaint for discrimination with the office of the hearing examiner, naming as respondents First Impressions and George Russell. This was the first time George Russell was personally named as a respondent in the action. Invoking the statute of limitations, Russell moved to dismiss the complaint against him.

The hearing examiner found that the Department had established the criteria necessary to relate back the amendment adding Russell as party to the date of the filing of the original charge. Proceeding to the merits, the examiner determined that Russell had created an unacceptable working environment in violation of SMC 14.04.

Russell subsequently filed an application for writ of certiorari in King County Superior Court. On February 12, 1992, the trial court ruled that the statute of limitations and CR 15(c) were inapplicable to administrative proceedings, and affirmed the hearing examiner's decision that there was an oppressive work environment that was discriminatory to Slumkoski. This appeal followed.

## II

The Seattle Fair Employment Practices Ordinance, SMC 14.04, governs unfair employment practices. The legislation is authorized by RCW 49.60, Washington's Law Against Discrimination. RCW 49.60.010. Russell claims that no complaint was filed against him personally until after the expiration of the statute of limitations, and he argues that the hearing examiner erred by applying the doctrine of "relation back" under CR 15.[2] It is undisputed that Russell

---

[2] Russell has also assigned error to several of the Superior Court's rulings. This was unnecessary because we review the final decision of an administrative

was not formally named as a respondent until over 5 years after the facts giving rise to Slumkoski's verified employment charge.

 Because the verified employment charge in this case was filed in 1985, our review in this case is governed by former RCW 34.04.130(6). *See* RCW 34.05.902; *Bellevue v. International Ass'n of Fire Fighters, Local 1604*, 119 Wn.2d 373, 382 n.1, 831 P.2d 738 (1992) (cases commenced prior to July 1, 1989, are governed by the former state administrative procedure act, RCW 34.04).[3] Accordingly, we review an administrative agency's conclusions of law under the "error of law" standard of former RCW 34.04.130(6)(d). *Haley v. Medical Disciplinary Bd.*, 117 Wn.2d 720, 728, 818 P.2d 1062 (1991). Under the standard, the court accords substantial weight to the agency's interpretation of the law, although the court may substitute its judgment for that of the agency. *Haley*, at 728. Here, however, the Department is entitled to no special deference regarding the applicability of CR 15(c), because an agency has no special expertise in interpreting court rules.

---

agency on the administrative record, and any findings or conclusions entered by the superior court are disregarded. *See Fisher v. Employment Sec. Dep't*, 63 Wn. App. 770, 772-73, 822 P.2d 791 (1992).

[3]RCW 34.04.130 was recodified by Laws of 1988, ch. 288, § 706 and can now be found at RCW 34.05.570.

The Washington State Law Against Discrimination provides a statutory right to obtain review of administrative remedies imposed pursuant to antidiscrimination ordinances enacted by a first class city with over 125,000 population. RCW 49.60.330; *see generally* AGO 14 (1981). Because the Legislature has provided that the right to obtain judicial review of administrative orders under the Law Against Discrimination is pursuant to the provisions of the Administrative Procedure Act, *see* RCW 49.60.270, our review of the administrative record is governed by APA standards. Thus, we question whether Russell's resort to a writ of certiorari below was appropriate. The City contends that the APA does not apply and that review is limited to a determination of whether the agency's action was arbitrary and capricious or otherwise contrary to law. Because neither party briefed the issue of whether the writ of certiorari procedure was proper, and because our decision to affirm would necessarily be the same were we to apply this more deferential standard to the examiner's decision, we decline to resolve the issue here.

The parties and the hearing examiner analyzed this issue as one of relation back under CR 15(c). This analysis was misplaced. CR 15(c), which governs relation back of amended pleadings, is clearly inapplicable because this action was not brought in superior court.[4] The complaint here was brought as an administrative proceeding under the Seattle Fair Employment Practices Ordinance, SMC 14.04. In determining the proper standard for relation back of amendments in this context, we must look to the provisions of the ordinance, as well as to the liberal construction ordinarily applied to the interpretation of this type of remedial legislation.

Under SMC 14.04.090, a complainant has 6 months from the date of the alleged unfair employment practice in which to file a charge with the Department. If the parties fail to reach an agreement or to conciliate, then SMC 14.04.170 authorizes the city attorney to file an administrative complaint. *See* SMC 14.04.140(B). This complaint must name as a respondent the party named in the original charge filed by the complainant and investigated by the Department. Because Slumkoski's charge never formally named Russell, SMC 14.04.170 does not authorize the Seattle City Attorney to file a complaint against Russell unless (1) the charge can be construed to include allegations against Russell, or (2) the complaint is deemed to amend the charge.

SMC 14.04.100 governs charge amendments and provides, in pertinent part, as follows:

> The charging party may amend a charge to cure technical defects or omissions; or to clarify and amplify allegations made therein; or to add allegations related to or arising out of the subject matter set forth, or attempted to be set forth, in the original charge. For jurisdictional purposes, such amendments shall relate back to the date the original charge was first filed. . . .

---

[4]CR 1 provides that the rules "govern the procedure in the *superior court* in all suits of a civil nature whether cognizable as cases at law or in equity". (Italics ours.) This action was not brought in superior court, but was instead filed with and investigated by the Department. After conciliation attempts failed, the case was prosecuted before the hearing examiner, who nonetheless decided the issue by applying CR 15(c). The matter only reached superior court by virtue of a writ of review proceeding.

The scope of this section must be construed in accordance with our rules of statutory construction, which provide that, as a general matter, "the spirit and intent of the statute should prevail over the literal letter of the law", and that statutes should be interpreted in a manner which "best advances the perceived legislative purpose." *Wichert v. Cardwell*, 117 Wn.2d 148, 151, 812 P.2d 858 (1991). In addition, the relevant legislation itself mandates expansive interpretation of its protections against discrimination. SMC 14.04.020(C) states that "[t]he provisions of this chapter shall . . . be liberally construed for accomplishment of its policies and purposes". Similarly, RCW 49.60, the enabling legislation for this ordinance, provides that

> [t]he provisions of this chapter shall be construed liberally for the accomplishment of the purposes thereof. . . . Nor shall anything herein contained be construed to deny the right to any person to institute any action or pursue any civil or criminal remedy based upon an alleged violation of his civil rights.

RCW 49.60.020.

Thus, in determining whether an unnamed party in a verified employment charge may be added in a subsequent civil prosecution, the spirit, object, and express purpose of our antidiscrimination laws clearly militate against an interpretation that imposes hypertechnical barriers to the pursuit of legitimate discrimination claims. SMC 14.04 must be interpreted to advance the legislative purpose here at issue, the "elimination and prevention of discrimination in employment". RCW 49.60.010. Liberal construction is particularly crucial where, as here, the statutory scheme contemplates that a layperson unversed in the technicalities of pleading will initiate the process. *See Love v. Pullman Co.*, 404 U.S. 522, 527, 30 L. Ed. 2d 679, 92 S. Ct. 616 (1972).

■ At the hearing in this case, Russell testified that all along he had understood the charge filed with the Department to be against him and his corporation because, as far as he was concerned, he was the corporation. We hold that under these circumstances, the failure to name an individual *admittedly* indistinguishable from the properly named corporate party was no more than an "omission" or a "tech-

nical defect" under SMC 14.04.100. The Department's complaint only made explicit what the parties had recognized all along: that George Russell was the respondent in Slumkoski's discrimination charge.

■ Our holding is entirely consistent with Title VII law. Because RCW 49.60 substantially parallels the provisions of Title VII, Washington courts look to federal law in construing RCW 49.60. *See, e.g., Hollingsworth v. Washington Mut. Sav. Bank*, 37 Wn. App. 386, 390, 681 P.2d 845, *review denied*, 103 Wn.2d 1007 (1984). Because SMC 14.04 substantially parallels RCW 49.60, we believe that federal law regarding the filing of EEOC complaints is instructive and provides an appropriate framework for resolving the issue faced here.

■ Under Title VII, a civil action may only be filed "against the respondent named in the charge [filed with the Equal Employment Opportunity Commission (EEOC)]." 42 U.S.C.A. § 2000e-5(f)(1). Several courts have concluded that reference to a party "in the body of an EEOC charge is sufficient to confer jurisdiction over the claim" against the unnamed individual. *Acampora v. Boise Cascade Corp.*, 635 F. Supp. 66, 71 (D.N.J. 1986). These courts find jurisdiction when references to a party in the body of a charge is functionally analogous to being "named", *i.e.*, when "there is sufficient identity of interest between the respondent [named in the EEOC charge] and the defendant [subsequently named in the complaint] to satisfy the intention of Title VII that the defendant have notice of the charge and the EEOC have an opportunity to attempt conciliation." *Romero v. Union Pac. R.R.*, 615 F.2d 1303, 1311 (10th Cir. 1980); *Sandom v. Travelers Mortgage Servs., Inc.*, 752 F. Supp. 1240, 1250 (D.N.J. 1990).

The federal courts commonly apply a 4-part test to determine whether a district court has jurisdiction in such circumstances:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining

voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Glus v. G.C. Murphy Co.*, 629 F.2d 248, 251 (3d Cir.) (quoting *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977)), *cert. denied sub nom. Retail, Wholesale & Dep't Store Union v. G.C. Murphy Co.*, 449 U.S. 949 (1980), *vacated on other grounds*, 451 U.S. 935 (1981). This test is not a "mechanical one" and no single factor is dispositive; rather, each factor is evaluated in the light of the statutory purposes of Title VII and the interests of both parties. *Glus*, at 251.

Russell has conceded that *Glus* factors 2 and 4 are contrary to his position. On the other hand, the Department appears to concede that it cannot prevail on factor 1. Examining the factors in the light of the purposes of RCW 49.60 and SMC 14.04, and taking into account the relative interests of the parties, we conclude that factors 2 (identity of interest) and 3 (prejudice) weigh heavily in the Department's favor and are dispositive in this instance.

The record amply demonstrates that the verified employment charge, filed in 1985, focused on Russell and *only* on Russell. Slumkoski's recitation of facts in her charge indicated the precise role Russell played in the alleged discrimination against her.[5] Russell concedes he had actual notice of

---

[5]The charge stated in pertinent part:

"I believe Respondent discriminated against me due to race, Black, and sex, female, because:

"1. Respondent's owner, George Russell, regularly made derogatory comments about women, including referring to them as bitches and saying he preferred to work with all men instead of women.

"2. I overheard George Russell making comments about how I smelled. He routinely treated me rudely, both verbally and by grabbing things out of my hands.

"3. Other employees of Respondent have heard George Russell make sexually and racially derogatory comments about me.

"4. I was the only Black female employed by Respondent between January 13, 1984 and March 12, 1985."

the original charges and the offer to conciliate. Moreover, the administrative law judge made findings of fact which strongly support the conclusions that Russell's interests were identical to those of First Impressions and that Russell suffered no prejudice:

> 3. Respondent, George Russell, president and manager of First Impressions Printing was served with the Amended Determination and Offer to Conciliate by certified mail on March 4, 1988. . . . The Determination and Offer to Conciliate acknowledges that George Russell is the president and manager of First Impressions Printing. The findings and conclusions identify George Russell as the party who created the discriminatory work environment which was in violation of SMC Chapter 14.04.
>
> 4. On July 30, 1985, Mr. Russell wrote a letter to SHRD in which he stated that four months had lapsed since the discrimination charge was filed *"against this firm and myself as owner,"* and he wanted the SHRD to proceed with the hearing to clear the matter. . . .

(Italics ours.) In addition, as noted previously, Russell's own testimony at the hearing was that he had *always* understood that the charge filed with the Department was against him and his corporation because, as far as he was concerned, he *was* the corporation. In sum, the charge placed Russell on adequate notice of Slumkoski's allegations, and in fact Russell continued to contest Slumkoski's allegations and defend against them long after the company had been dissolved and no longer existed.

Despite this evidence, Russell claims he suffered actual prejudice. First, Russell argues that he cannot find certain documents from the corporate records of First Impressions. Russell claims these documents would have revealed that the business relationship between Russell and Gary Chaussee, one of the Department's primary witnesses, "had not ended amicably". However, a review of the hearing examiner's decision demonstrates that any such prejudice was harmless, for even without this evidence, the hearing examiner specifically found that "Mr. Russell and Mr. Chaussee had an acrimonious ending to their business relationship."

Next, Russell argues that witnesses' memories have faded and that key witnesses are no longer available. First,

we note that since Russell has failed to cite any portion of the record that would support these statements of fact, we assume his assertions of prejudice are merely speculative. Speculative allegations that witnesses are unavailable or that memories have dimmed is insufficient to demonstrate actual prejudice. *See State v. Potter*, 68 Wn. App. 134, 142-43, 842 P.2d 481 (1992).[6]

Finally, we find it significant that the federal cases applying *Glus* have consistently rejected claims of presumed prejudice and upheld jurisdiction over the unnamed parties where, as here, the individuals were specified in and knew of the plaintiffs' charges. *See Garvey v. Dickinson College*, 761 F. Supp. 1175, 1186-87, *modified on other grounds*, 763 F. Supp. 796 (M.D. Pa. 1991); *Sandom, supra* at 1248-50 & n.8; *Diem v. San Francisco*, 686 F. Supp. 806, 811 (N.D. Cal. 1988); *Acampora, supra* at 71; *cf. Bernstein v. Aetna Life & Cas.*, 843 F.2d 359, 362 (9th Cir. 1988) (requiring only that EEOC charge allege facts from which court could infer that unnamed party violated Title VII). Thus, as applied, the *Glus* test clearly supports the hearing examiner's determination in this case.

In conclusion, we hold that a liberal construction of the Seattle Fair Employment Practices Ordinance supports the hearing examiner's decision that the complaint in this case stated a timely claim against Russell individually. Accordingly, neither the hearing examiner nor the Superior Court erred in declining to dismiss the City's complaint.

## III

Alternatively, Russell contends that there is insufficient evidence in the record to support the hearing examiner's

---

[6]Although Russell specifically names the two individuals he claims to have "lost contact with", there is no factual basis in the record to establish that he attempted to contact them or that their testimony would have been favorable to him or relevant to the issue of discrimination. Russell has failed to raise even an inference that he would have maintained contact with these individuals had Slumkoski's charge named him individually.

finding of disparate treatment of Slumkoski on the basis of either race or gender. This contention is without merit.

 We review the findings of fact in this case under the "clearly erroneous" standard of former RCW 34.04.130(6)(e). A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. *Forsman v. Employment Sec. Dep't*, 59 Wn. App. 76, 83, 795 P.2d 1184 (1990), *review denied*, 116 Wn.2d 1005 (1991).

Under SMC 14.04, it is an unfair employment practice within the city of Seattle for any "[e]mployer to discriminate against any person with respect to hiring, tenure, promotion, terms, conditions, wages or privileges of employment, or with respect to any matter related to employment". SMC 14.04.040. Discrimination is defined as

> any act, by itself or as part of a practice, which is intended to or results in different treatment or differentiates between or among individuals or groups of individuals by reason of race, color, age, sex, marital status, sexual orientation, political ideology, creed, religion, ancestry, national origin; or the presence of any sensory, mental or physical handicap.

SMC 14.04.030(F).

As reflected in the hearing examiner's findings of fact, the record in this case is replete with evidence of Russell's abusive conduct toward female employees, and toward Slumkoski by reason of her race and sex specifically. Several witnesses testified that Russell referred to women as "stupid cunts" and "bitches", and stated that women should not be in business. Slumkoski testified that she felt women were treated differently at First Impressions, and stated that Russell called women "sleazy whores [and] bitches that didn't need to be in business". Several witnesses testified that Russell routinely made derogatory comments about women and that he had a "distinct prejudice" toward women. One former employee testified that, in Slumkoski's presence, Russell made derogatory comments based on Slumkoski's race, such as " 'Doris is look-

ing pretty niggery this morning' ". Slumkoski testified that Russell made comments to her to the effect that she looked like or was like "Aunt Jemima". Although Russell introduced some evidence to show that he did not discriminate, the hearing examiner ruled against him, and entered the following findings and conclusions:

> Mr. Russell subjected Ms. Russell [*sic*] to a hostile and discriminatory work environment through his constant use of sexually and racially abusive language. Mr. Russell's comments are not excusable either because they were not in all instances directed at Ms. Slumkoski and or because the work environment was stressful in nature. As the only black woman in his employ, and the only woman working in close proximity to Mr. Russell on a daily basis, Ms. Slumkoski would be more affected by his language and insults than any of the other female staff who had marginal contacts with him during the course of the day.
> The argument that the racially derogatory comments were not personally directed at Ms. Slumkoski is without merit. . . . Mr. Russell's generally temperamental nature or his "meanness" to everyone does not ameliorate the effects of the hostile environment. Mr. Russell did not manifest his anger or direct his temper at men employees by the use of racist or sexist terms. His discriminatory comments were focused at women and at blacks. . . .
> . . . The pressures of the working environment can never be a defense to creating a hostile and discriminatory work environment. Mr. Russell's constant use of sexist and racist language created an unacceptable work environment in violation of SMC 14.04.040.

We believe the evidence is more than sufficient to support the hearing examiner's findings and conclusions on the issue of discrimination. On appeal, Russell has raised essentially the same arguments he raised below. Russell claims that the evidence demonstrates he abused everyone and thus did not subject Slumkoski to different treatment on account of race or sex. He also attacks the credibility of Gary Chaussee, one of the witnesses against him.

■ The testimony amply demonstrates that Russell was more abusive toward female employees and made specific, derogatory comments about African Americans to Slumkoski and others. Such evidence is sufficient proof of conduct defined

as discriminatory by SMC 14.04. As for Russell's claim of witness bias, an administrative tribunal has the discretion to evaluate the weight to attach to the evidence presented, and such an evaluation will not ordinarily be reconsidered on appeal. *Inland Empire Distrib. Sys., Inc. v. Utilities & Transp. Comm'n*, 112 Wn.2d 278, 286, 770 P.2d 624, 87 A.L.R.4th 627 (1989). Apparently, the hearing examiner determined that Mr. Chaussee's testimony was credible despite Russell's testimony that he was biased. Credibility determinations are for the trier of fact, not the appellate court, and they will not be reversed on appeal. *See In re Marriage of Olivares*, 69 Wn. App. 324, 336, 848 P.2d 1281 (1993).[7]

After reviewing the record as a whole, we are convinced that the hearing examiner did not err in concluding that Russell had engaged in discrimination in violation of SMC 14.04.

Affirmed.

WEBSTER, C.J., concurs.

SCHOLFIELD, J. (dissenting) — I respectfully dissent.

The verified employment charge was filed with the Seattle Department of Human Rights (Department) on March 27, 1985. The only entity named as respondent was First Impressions Printing, Inc. First Impressions was administratively dissolved in March 1987, 2 years after the filing of the charge and 18 months after the running of the 6-month limitation period imposed by the Seattle Fair Employment Practices Ordinance, Seattle Municipal Code (SMC) 14.04.090.

On June 19, 1990, a Seattle city attorney filed a complaint for discrimination with the office of the hearing examiner, naming as respondents First Impressions and George Russell. This was the first time George Russell was personally

---

[7] In addition, Russell contends that certain statements he made were not racist. For example, he argues that calling Slumkoski "Aunt Jemima" did not constitute racially discriminatory conduct. We find these arguments unpersuasive.

named as a respondent in the action. Russell moved for dismissal of the complaint against him, based on the statute of limitations. His motion should have been granted.

The majority opinion acknowledges that Russell was not named as a respondent until over 5 years after the filing of the verified employment charge.

Under SMC 14.04.090, a complainant has 6 months from the date of the alleged unfair employment practice in which to file a charge with the Department. The 6-month limitation was not met in this case. Nevertheless, the majority brushes aside the 6-month bar, arguing that liberal construction justifies it. I disagree. I prefer to leave the function of amending city ordinances and statutes to those constitutionally authorized to legislate.

When this issue was addressed by the hearing examiner, the examiner concluded that although the Department erred in not originally naming Russell as a party, this error was excusable as "all parties believed that by serving the corporation, the [Department] was also serving George Russell, the president and general manager." Hearing examiner decision, conclusion 3. The examiner's reasoning is insupportable, and the majority opinion makes no effort to assert otherwise.

SMC 14.04.100 governs amendments and provides, in pertinent part, as follows:

> The charging party may amend a charge to cure technical defects or omissions; or to clarify and amplify allegations made therein; or to add allegations related to or arising out of the subject matter set forth, or attempted to be set forth, in the original charge. For jurisdictional purposes, such amendments shall relate back to the date the original charge was first filed.

It is indisputable that the language of the ordinance relating to amendments does not address the effect of an attempted amendment of a charge adding a party. In particular, it does not address amendments adding a party after the 6-month filing period has expired.

The enabling legislation, RCW 49.60, states that administrative law judges conducting hearings "may permit reasonable amendment to any complaint or answer." RCW 49.60-.250(4). It is equally obvious that the enabling legislation does not attempt to address the precise issue involved here: an amendment to a charge adding a party after the 6-month filing period has expired.

In apparent recognition that nothing in the Fair Employment Practices Ordinance permitted the amendment, the hearing examiner resorted to CR 15(c), which permits relation back of amendments to pleadings where the requirements of the rule are met. Relation back under CR 15(c) is also subject to a court-imposed requirement that relation back will not be permitted if the plaintiff's delay in naming the proper party is due to inexcusable neglect. *North St. Ass'n v. Olympia*, 96 Wn.2d 359, 368-69, 635 P.2d 721 (1981).

The majority opinion recognizes that CR 15(c) is inapplicable because this action was not brought in superior court. CR 1 provides that the civil rules "govern the procedure in the *superior court* in all suits of a civil nature whether cognizable as cases of law or in equity . . .". (Italics mine.)

The majority opinion places reliance upon a 4-part test set forth in *Glus v. G.C. Murphy Co.*, 629 F.2d 248 (3d Cir.) (quoting *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977)), *cert. denied sub nom. Retail, Wholesale & Dep't Store Union v. G.C. Murphy Co.*, 449 U.S. 949 (1980), *vacated on other grounds*, 451 U.S. 935 (1981).

The reasoning of the Third Circuit in *Glus* is of very doubtful applicability here. The *Glus* case does not involve an attempt by a complaining party to add a new defendant. It involves the right of a named party to proceed in an action for contribution against another named party. Furthermore, since all of the parties involved were named in the original complaint, there are no late joinder or statute of limitations issues in *Glus*. *See* 562 F.2d at 885.

For these reasons, the reasoning of the *Glus* court allowing the action for contribution to proceed provides no guidance on the fundamental issues involved in the case before us.

Because the statute of limitations bars the action against Russell and the law provides no legal basis for relation back for an amendment naming Russell as a party approximately 5 years after the time for filing a complaint has expired, I would reverse and dismiss the action as to Russell.

Review denied at 123 Wn.2d 1011 (1994).