# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

CITY OF SEATTLE, SEATTLE OFFICE
FOR CIVIL RIGHTS, and SEATTLE
OFFICE OF LABOR STANDARDS,

               Respondents,

        v.

AMERICAN HEALTHCARE SERVICES,
INC., GIDEON OYELEKE, and the
SEATTLE HEARING EXAMINER,

               Appellants.

DIVISION ONE

No. 79692-5-I

PUBLISHED OPINION

DWYER, J. — This is an employment discrimination case involving American Healthcare Services, Inc.'s (AHS) alleged discrimination and retaliation against Jasmine Pope premised on her request for a reasonable accommodation for her memory related disability. The City of Seattle (City) brought an action against AHS, on Pope's behalf, before a city hearing examiner, alleging violations of Seattle's Fair Employment Practices Ordinance, codified at chapter 14.04 Seattle Municipal Code (SMC). The hearing examiner dismissed the case on summary judgment. The dismissal was subsequently reversed by the superior court.

This appeal presents two questions: (1) what is the proper procedure for seeking judicial review of decisions of Seattle hearing examiners regarding violations of employment discrimination provisions of the SMC, and (2) did the City proffer evidence demonstrating that a genuine dispute of material fact

precluded summary judgment?  We hold that appeals from a Seattle hearing

examiner's decision regarding alleged violations of chapter 14.04 SMC are

governed by the Administrative Procedure Act (APA), chapter 34.05 RCW, and

that the City presented evidence establishing a genuine dispute of material fact,

precluding summary judgment.  Thus, we affirm the superior court.

I

Jasmine Pope suffers from the aftereffects of a frontotemporal craniotomy

she received in 2014 to correct multiple brain aneurysms, which include

headaches, nausea, sensitivity to light and sound, and issues with her memory.

In April 2015, Pope was employed as a home health aide for AHS, a company

that provides in-home healthcare to its clients.[1]  Pope was certified by the

Department of Health and Human Services for her job and provided in-home

healthcare to AHS clients, helping them with food preparation, laundry, cleaning,

toileting, grocery shopping, and sometimes with transportation to medical

appointments.

AHS utilized a telephone clock in system to keep track of employee hours

and shifts.[2]  This system required employees to call from a client's telephone to

clock in at the beginning of a shift and to call again to clock out at the end of the

shift.  Pope had difficulty remembering to call to clock in and out, and received a

disciplinary notice from AHS regarding the issue in May 2015.  In response, Pope

informed AHS of her then-recent brain surgery and provided a note from her

---

[1] AHS was founded by Gideon Oyeleke in 2000, and by 2015 employed approximately 50 to 60 home health aides.

[2] AHS implemented the telephone clock in system in 2012.  Before 2012, AHS utilized a paper time sheet system to keep track of employee hours.

doctor describing the symptoms she continued to suffer as aftereffects of the surgery, including her memory problems. Pope also informed AHS that she believed there was a discrepancy between the hours that she had worked and the pay that she had received. AHS blamed the discrepancy on Pope's failure to properly clock in and out using the telephone system. During this time, Pope also submitted paper time sheets recording the hours she worked.

AHS did not initially provide any response to Pope's notice of her memory troubles and did not do anything to assist her with the telephone system. Weeks later, a supervisor began calling Pope to remind her to use the telephone system at the beginning and end of her shifts, but this only happened a few times.

In June 2015, a month after she had raised her medical issues with AHS, Pope filed a complaint with the Seattle Office of Civil Rights (SOCR) alleging that AHS did not accommodate her disability. Subsequently, the Seattle Office of Labor Standards (SOLS) filed a minimum wage and administrative wage theft charge against AHS.

AHS learned of the accommodation complaint and the administrative wage theft charge in early July 2015. Shortly after learning of Pope's complaints, AHS wrote to Pope's medical provider demanding that she provide an assessment of whether Pope was capable of performing the duties of a care provider and complaining that Pope was unable to accurately use the telephone clock in system and was forgetful. Pope's medical provider responded by informing AHS that she was not qualified to make such a vocational assessment. AHS did not engage in any further efforts to ascertain whether Pope was

medically fit for work.

The following week, AHS began assisting Pope with clocking in using the telephone system by instructing her to set reminder alarms on her own telephone and by calling her, although they did not do so every time Pope was required to clock in or out. Then, only one week later, AHS informed Pope that her client had complained that Pope had not come to work as scheduled on July 16 and 17, 2015, and suspended Pope without pay.[3] Pope did not believe that she had missed any scheduled work shifts because she had worked out a schedule with her client that did not require her to be with the client on those days. The suspension letter specifically stated that one of the reasons for the suspension was AHS's need to accommodate her disability and that Pope would only be reinstated if her physician guaranteed that Pope was medically cleared to work as a home health aide.

Pope subsequently had a medical provider send AHS an e-mail stating that she was cleared to work. AHS did not request any further medical opinions from any other providers. Instead, despite having received a doctor's note stating that Pope was cleared to work, which is exactly what it had demanded from Pope in its suspension letter, AHS responded to Pope's medical provider with an e-mail stating that it believed Pope could not use the telephone clock in system, that she lied about her work hours, and that she was a danger to vulnerable clients and could not work. AHS's e-mail demanded that Pope's

---

[3] It also appears that AHS accused Pope of refusing to show up for a shift on July 20, 2015, the same day that she was suspended. However, the City presented evidence in which Pope stated that she was told not to go to her client's house that day and was suspended before she could begin the shift.

medical provider complete another assessment, send it a guarantee that Pope would be able to use the telephone clock in system in her then-current condition, and opine that Pope would not be a danger to clients. AHS also asserted in its response that the Department of Labor and Industries would not permit Pope to work given her condition.[4] AHS did not permit Pope to return to work and did not send Pope to any independent fitness for duty examinations.

SOCR and SOLS each investigated Pope's allegations against AHS and determined both that AHS did not accommodate Pope's disability and that it retaliated against her for making complaints related to her disability and wages. The Seattle city attorney then filed a complaint with the City's Office of Hearing Examiner based on SOCR's determination. Meanwhile, AHS appealed SOLS's determination to the City's Office of Hearing Examiner. The hearing examiner consolidated the cases for hearing.

Subsequently, AHS filed a successful motion to dismiss all claims against it on summary judgment. Thereafter, the City filed a petition for writ of review in King County Superior Court pursuant to RCW 7.16.050. The superior court issued the writ of review and then proceeded to reverse the hearing examiner's decision, concluding that disputed issues of material fact precluded summary judgment.

AHS appeals. Our commissioner sought argument from the parties addressing whether the superior court's order was appealable as a matter of right. The commissioner then referred the question to us.

---

[4] There is no evidence in the record that the Department of Labor and Industries ever required AHS to suspend Pope or to bar her from working.

II

Before reaching the merits, we must resolve the parties' dispute regarding whether AHS has a right to appeal from the superior court's order reversing the hearing examiner's dismissal on summary judgment. AHS contends that the superior court's decision is appealable to us as a matter of right under RAP 2.2(c) and chapter 7.16 RCW, and that, even if it was not appealable as a matter of right, discretionary review is warranted under RAP 2.3(b). In response, the City asserts that the superior court's order is not appealable under RAP 2.2(c) or chapter 7.16 RCW and that discretionary review is not warranted in this case.

Unfortunately, neither party correctly identified the applicable legal principles that resolve this dispute. Because RCW 49.60.330 authorizes review of Seattle hearing examiner decisions regarding claims of discrimination pursuant to the APA, which authorizes appeals to the Court of Appeals as a matter of right, AHS may appeal from the superior court's order herein as a matter of right.

Somewhat vexingly, while the parties dispute whether the superior court's order is appealable as a matter of right, they agree that the superior court's review was properly conducted pursuant to a statutory writ of review authorized by chapter 7.16 RCW. But this is not so.

The right to petition the superior court for a writ of review, also known as a writ of certiorari, is set forth by statute.[5] RCW 7.16.030,.040. A superior court

---

[5] There is also a distinct right to petition for a writ of certiorari recognized by our state constitution. CONST. art. IV, § 6. This constitutional writ of certiorari is only available when both direct appeal and a statutory writ of review are unavailable. Malted Mousse, Inc. v. Steinmetz, 150 Wn.2d 518, 533, 79 P.3d 1154 (2003); Bridal Trails Cmty. Club v. City of Bellevue, 45 Wn. App. 248, 724 P.2d 1110 (1986).

may grant a writ of review when "an inferior tribunal, board or officer, exercising judicial functions, has exceeded the jurisdiction of such tribunal, board or officer, or one acting illegally, or to correct any erroneous or void proceeding, or a proceeding not according to the course of the common law," but only when "there is no appeal, nor in the judgment of the court, any plain, speedy and adequate remedy at law." RCW 7.16.040. A statutory writ of review is unavailable when direct appeal to superior court is authorized by statute. See City of Seattle v. Holifield, 170 Wn.2d 230, 240, 240 P.3d 1162 (2010). Thus, "[w]here a party fails to pursue a statutory right to a direct appeal, a petition for writ of review is properly denied on that basis alone." Coballes v. Spokane County, 167 Wn. App. 857, 867, 274 P.3d 1102 (2012) (citing Torrance v. King County, 136 Wn.2d 783, 792, 966 P.2d 891 (1998)).

However, if a superior court grants a writ of review, and conducts that review, on the merits, of a decision from which the parties had a right to appeal to superior court, then an appellate court may review the superior court's decision as though the superior court had been deciding a properly filed direct appeal, provided that the scope of the superior court's review did not exceed the authority it would have had in reviewing the case through such an appeal. See Coballes, 167 Wn. App. at 868 ("The superior court's review on the merits was consistent with the fact that the only basis on which it should have reviewed the board's decision was statutory appeal under RCW 36.32.330, and we treat its review as such."); see also Russell v. Dep't of Human Rights, 70 Wn. App. 408, 412 n.3, 854 P.2d 1087 (1993) (noting that the writ of certiorari filed therein was

7

the improper procedure for obtaining review because the parties had a right to appeal, but nevertheless considering the merits of the case).[6]

The Seattle hearing examiner's decision herein dismissed claims brought pursuant to the Seattle Fair Employment Practices Ordinance, chapter 14.04 SMC. This ordinance is authorized by chapter 49.60 RCW, known as Washington's Law Against Discrimination (WLAD). RCW 49.60.010,.330. WLAD also "provides a statutory right to obtain review of administrative remedies imposed pursuant to antidiscrimination ordinances enacted by a first class city with over 125,000 population." Russell, 70 Wn. App. at 412 n.3 (citing RCW 49.60.330).[7] Furthermore, the Russell court noted, "the Legislature has provided that the right to obtain judicial review of administrative orders under the Law Against Discrimination is pursuant to the provisions of the Administrative

---

[6] The Coballes court did not identify a set of circumstances in which a superior court's review of the merits of an agency decision through such an erroneously granted writ of review would require the exercise of judicial authority not authorized in a direct appeal. Given the Coballes court's acknowledgement that writs of review are generally considered to entail a more limited scope of review than an appeal, it is unclear whether such a test would ever disallow review of a superior court's disposition on the merits of an erroneously granted writ of review when there is a right to appeal. See 167 Wn. App. at 867. We need not resolve this question to resolve the issues presented herein.

[7] RCW 49.60.330 states that
[a]ny county or any city classified as a first-class city under RCW 35.01.010 with over one hundred twenty-five thousand population may enact resolutions or ordinances consistent with this chapter to provide administrative and/or judicial remedies for any form of discrimination proscribed by this chapter. **The imposition of such administrative remedies shall be subject to judicial review. The superior courts shall have jurisdiction to hear all matters relating to violation and enforcement of such resolutions or ordinances, including petitions for preliminary relief, the award of such remedies and civil penalties as are consistent with this chapter, and enforcement of any order of a county or city administrative law judge or hearing examiner pursuant to such resolution or ordinance.** Any local resolution or ordinance not inconsistent with this chapter may provide, after a finding of reasonable cause to believe that discrimination has occurred, for the filing of an action in, or the removal of the matter to, the superior court.
(Emphasis added.)

Procedure Act."[8]  Russell, 70 Wn. App. at 412 n.3 (citing RCW 49.60.270).  Thus,

litigants seeking judicial review of administrative orders pursuant to anti-

discrimination ordinances authorized under RCW 49.60.330 have a right of

appeal to the Court of Appeals.  See RCW 34.05.526 (review by the Court of

Appeals and the Supreme Court "shall be secured in the manner provided by law

for review of superior court decisions in other civil cases"); accord Alpine Lakes

Prot. Soc'y v. Dep't of Nat. Res., 102 Wn. App. 1, 6, 979 P.2d 929 (1999)

(accepting appeal under the APA from superior court order reviewing an

administrative summary judgment order of the Washington Forest Practices

Appeals Board).  Therefore, because Seattle is a first-class city[9] with a

population exceeding 125,000, Seattle hearing examiner orders pertaining to

claims arising from alleged violations of chapter 14.04 SMC are appealable to

superior court and to the Court of Appeals as a matter of right.

Because there was a right to appeal from the Seattle hearing examiner's

order dismissing claims brought under chapter 14.04 SMC, it is plain that a writ of

review was not the proper procedural mechanism for seeking judicial review of

the Seattle hearing examiner's decision.  The petition for a writ of review should

---

[8] Oddly, the Russell court stated that it was declining to determine whether the writ of certiorari through which the superior court considered the hearing examiner's decision was the proper procedural mechanism to obtain judicial review.  70 Wn. App. at 412 n.3.  It made this statement despite explaining that the APA governs judicial review of a Seattle hearing examiner's decision on claims arising from violations of chapter 14.04 SMC and actually analyzing the issues presented before it in the case through application of the judicial review mechanisms set forth in the APA.  Russell, 70 Wn. App. at 412.  Thus, the Russell court plainly premised its decision on the conclusion that the APA applied to the issues presented therein.

[9] The statutory definition of a first-class city is "a city with a population of ten thousand or more at the time of its organization or reorganization that has a charter adopted under Article XI, section 10, of the state Constitution."  RCW 35.01.010.  Seattle is such a first-class city.  City of Seattle v. Sisley, 164 Wn. App. 261, 266, 263 P.3d 610 (2011).

have been denied. However, because the superior court issued the writ of review and considered the merits of the hearing examiner's decision, we may treat such review as if the superior court had reviewed the matter through a direct appeal under the APA, provided that the superior court did not exceed the authority it would have had in such an appeal.[10] See Coballes, 167 Wn. App. at 868 ("The superior court's review on the merits was consistent with the fact that the only basis on which it should have reviewed the board's decision was statutory appeal under RCW 36.32.330, and we treat its review as such.").

While the APA does not explicitly authorize agencies to use summary judgment procedures, case law has established that judicial review of such summary proceedings must "overlay the APA standard of review with the

---

[10] We note that the hearing examiner in this matter dismissed both a retaliation claim under chapter 14.04 SMC and a retaliation claim under former chapter 14.19 SMC (2014). While RCW 49.60.330 authorizes a right of appeal for claims arising from alleged violations of chapter 14.04 SMC, it does not appear to extend such a right to claims arising from alleged violations of the former or current chapter 14.19 SMC. Thus, it appears that if the hearing examiner's decision had considered solely claims alleging violations of former chapter 14.19 SMC, a petition for a writ of review would have been the proper procedure for seeking superior court review.

This raises the question of whether, by considering the hearing examiner's dismissal of the retaliation claim brought pursuant to former chapter 14.19 SMC—a dismissal that, on its own, appears not to be appealable as a matter of right—the superior court herein exceeded the scope of authority it would have had in a direct appeal of the hearing examiner's order dismissing both claims arising under chapter 14.04 SMC and those arising under former chapter 14.19 SMC (2014). In other words, in a direct appeal of the hearing examiner's order herein authorized by RCW 49.60.330 and the APA, would the superior court have been able to consider the dismissal of the chapter 14.19 SMC retaliation claim?

We conclude that the superior court had the authority to consider the dismissal of the retaliation claim even though the dismissal of such a claim, on its own, would not be appealable. Once a party has an appealable order, an appeal therefrom brings the entire order before the reviewing court. Gazin v. Hieber, 8 Wn. App. 104, 114, 504 P.2d 1178 (1972). Indeed, our Supreme Court adheres to this principle every time it undertakes direct review of a death penalty case and declines to restrict its review to issues pertaining solely to the sentence of death. See, e.g., State v. Brown, 132 Wn.2d 529, 630-31, 940 P.2d 546 (1997) (considering issues pertaining to the proper admission of witness testimony at trial and Miranda warnings in addition to sentencing issues (Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)). Thus, because the hearing examiner's decision was appealable under RCW 49.60.330 and the APA, the superior court would have had the authority to review the entire order on a direct appeal.

summary judgment standard."  Verizon Nw., Inc. v. Emp't Sec. Dep't, 164 Wn.2d 909, 915-16, 194 P.3d 255 (2008).  A reviewing court must "view the facts in the record in the light most favorable to the nonmoving party."  Verizon Nw., Inc., 164 Wn.2d at 916 (citing Alpine Lakes, 102 Wn. App. at 14).  "Summary judgment is appropriate only where the undisputed facts entitle the moving party to judgment as a matter of law."  Verizon Nw., Inc., 164 Wn.2d at 916 (citing Alpine Lakes, 102 Wn. App. at 14).  The reviewing court must "evaluate the facts in the administrative record de novo."  Verizon Nw., Inc., 164 Wn.2d at 916; see also RCW 34.05.558 ("Judicial review of disputed issues of fact shall be conducted by the court without a jury and must be confined to the agency record for judicial review.").  Courts review an agency's legal determinations under an "error of law" standard, see RCW 34.05.570(3)(d), which permits a reviewing court to substitute its view of the law for that of the agency.  Verizon Nw., Inc., 164 Wn.2d at 915 (citing Haley v. Med. Disciplinary Bd., 117 Wn.2d 720, 728, 818 P.2d 1062 (1991)).

Herein, although reviewing the hearing examiner's order by way of a writ of review, the superior court properly applied the review standards set forth in Verizon Nw., Inc. for consideration of an appeal of an agency's summary judgment order, noting in its order that

> [s]ummary judgment is appropriate only if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  When determining whether summary judgment is appropriate, the court must consider the facts and all reasonable inferences from those facts in the light most favorable to the nonmoving party.  Generally, administrative hearing bodies are authorized to summarily dispose of matters before them through a summary judgment procedure.  On appeal, this court reviews *de*

11

*novo* the materials submitted to the Hearing Examiner by both parties.

(Citations omitted.)

The superior court considered the evidence in the record as it was presented to the hearing examiner and concluded that there were material facts in dispute that precluded summary judgment. As in Coballes, the superior court's review did not exceed the authority it would have had in a direct appeal and we therefore treat the superior court's review as such a direct appeal. 167 Wn. App. at 868. Therefore, AHS may appeal from the superior court's order as a matter of right.

III

Having concluded that AHS has a right to appeal from the superior court's order, we now address AHS's contention that the superior court erred when it reversed the hearing examiner's summary judgment order dismissing the City's claims. This is so, AHS appears to assert, because there was no evidence presented to show that Pope could perform the essential elements of her job, that Pope ever requested a reasonable accommodation from AHS, that AHS did not accommodate Pope, and that AHS retaliated against Pope when she filed complaints about its practices. In response, the City asserts that the superior court correctly concluded that the City presented evidence establishing a dispute of material fact regarding all of these issues and that summary judgment was improper. The City has the better argument.

As explained in section II, the APA governs judicial review of the Seattle hearing examiner's decision. We apply the APA's standards directly to the

administrative record. Verizon Nw., Inc., 164 Wn.2d at 915 (citing Tapper v. Emp't Sec. Dep't, 122 Wn.2d 397, 402, 858 P.2d 494 (1993)). We review the decision of the hearing examiner, not the underlying determinations of the SOCR and SOLS. See Verizon Nw., Inc., 164 Wn.2d at 915 (noting that the court reviews the highest level administrative ruling). "Because this court sits in the same position as the superior court, we do not give deference to the superior court's rulings." Verizon Nw., Inc., 164 Wn.2d at 915 (citing Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n, 123 Wn.2d 621, 633, 869 P.2d 1034 (1994)).

Again, while the APA does not explicitly authorize agencies to use summary judgment procedures, case law has established that judicial review of such summary proceedings must "overlay the APA standard of review with the summary judgment standard." Verizon Nw., Inc., 164 Wn.2d at 915-16. We must "view the facts in the record in the light most favorable to the nonmoving party." Verizon Nw., Inc., 164 Wn.2d at 916 (citing Alpine Lakes, 102 Wn. App. at 14). "Summary judgment is appropriate only where the undisputed facts entitled the moving party to judgment as a matter of law." Verizon Nw., Inc., 164 Wn.2d at 916 (citing Alpine Lakes, 102 Wn. App. at 14).

"We evaluate the facts in the administrative record de novo." Verizon Nw., Inc., 164 Wn.2d at 916; see also RCW 34.05.558 ("Judicial review of disputed issues of fact shall be conducted by the court without a jury and must be confined to the agency record for judicial review."). We review an agency's legal determinations under an "error of law" standard, see RCW 34.05.570(3)(d),

which permits reviewing courts to substitute their view of the law for that of the agency. Verizon Nw., Inc., 164 Wn.2d at 915 (citing Haley, 117 Wn.2d at 728). Summary judgment for an employer will seldom be appropriate in employment discrimination cases "because of the difficulty of proving a discriminatory motivation." Scrivener v. Clark Coll., 181 Wn.2d 439, 445, 334 P.3d 541 (2014).

AHS contends that the hearing examiner's dismissal order herein was proper because there were no disputed issues of material fact regarding whether it had violated provisions of chapter 14.04 SMC because (1) the City failed to provide a prima facie showing of discrimination in violation of chapter 14.04 SMC, (2) AHS established a complete defense to any discrimination claims under SMC 14.04.050(D), and (3) no evidence was submitted to prove that Pope's suspension was retaliation for requesting an accommodation or filing complaints with the City. This is so, AHS asserts, because there was no dispute that Pope was unable to perform the essential functions of her job as defined by AHS, that she never requested a reasonable accommodation because she did not provide medical proof of her disability, and because her suspension was not an adverse employment action.

"The Seattle Fair Employment Practices Ordinance, SMC 14.04, governs unfair employment practices" and is authorized by chapter 49.60 RCW. Russell, 70 Wn. App. at 411. Because chapter 14.04 SMC substantially parallels chapter 49.60 RCW, which substantially parallels the provisions of federal anti-discrimination law under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2000e-17, we look to interpretations of state and federal law to guide our

14

review of claims brought under chapter 14.04 SMC. Russell, 70 Wn. App. at 415

(citing Hollingsworth v. Wash. Mut. Sav. Bank, 37 Wn. App. 386, 390, 681 P.2d

845 (1984), abrogated on other grounds by Allison v. Hous. Auth. of City of

Seattle, 59 Wn. App. 624, 799 P.2d 1195 (1990)); accord Davis v. Dep't of Labor

& Indus., 94 Wn.2d 119, 125, 615 P.2d 1279 (1980).

Chapter 14.04 SMC states that it is an unfair employment practice for any:

A. Employer to discriminate against any person with respect to
hiring, tenure, promotion, terms, conditions, wages or privileges
of employment, or with respect to any matter related to
employment;

. . .

F. Employer, employment agency, or labor organization to
penalize or discriminate in any manner against any person
because they opposed any practice forbidden by this chapter or
because they made a charge, testified or assisted in any
manner in any investigation, proceeding, or hearing initiated
under the provisions of this chapter.[11]

SMC 14.04.040. The code defines "[d]iscrimination," "discriminate," and

"discriminatory act" as:

any act, by itself or as part of a practice, which is intended to or
results in different treatment or differentiates between or among
individuals or groups of individuals by reason of race, color, age,
sex, marital status, sexual orientation, gender identity, genetic
information, political ideology, creed, religion, ancestry, national
origin, honorably discharged veteran or military status, or the
presence of any disability.[12] "Discrimination," "discriminate,"
and/or "discriminatory act" includes harassment, such as racial and
sexual harassment, as well as harassment based on other
protected classes.

---

[11] Similar language is set forth in former SMC 14.19.060, prohibiting penalizing or
discriminating against an employee in retaliation for exercising rights protected under chapters
14.19. Former SMC 14.19.060 (2014) (Ordinance No. 124644, § 1). Chapter 14.19 SMC was
subsequently amended in 2015 through Ordinance No. 124960, but retains a substantively similar
prohibition. SMC 14.19.055.

[12] SMC 14.04.030 defines "[d]isability" as a "sensory, mental, or physical impairment that:
is medically cognizable or diagnosable; exists as a record or history; or is perceived to exist,
whether or not it exists in fact."

SMC 14.04.030.

SMC 14.04.050 sets forth several exceptions to the code's general proscription of disability-based discrimination. Most pertinently, it declares that such proscriptions, "insofar as they declare discrimination on the basis of the presence of any sensory, mental or physical handicap to be an unfair employment practice, shall not apply if the particular disability prevents the proper performance of the particular worker involved." SMC 14.04.050(D).

In employment discrimination cases, the plaintiff has the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); Hollingsworth, 37 Wn. App. at 390; Ellingson v. Spokane Mortg. Co., 19 Wn. App. 48, 54-55, 573 P.2d 389 (1978). "To establish a prima facie case of disability discrimination, an aggrieved employee must show that she: (1) has a disability; (2) can perform the essential functions of the job; and (3) was not reasonably accommodated."[13] Dedman v. Pers. Appeals Bd., 98 Wn. App. 471, 478, 989 P.2d 1214 (1999) (citing Reese v. Sears, Roebuck & Co., 107 Wn.2d 563, 579, 731 P.2d 497 (1987), overruled on other grounds by Phillips v. City of Seattle, 111 Wn.2d 903, 766 P.2d 1099 (1989); Dean v. Mun. of Metro. Seattle, 104 Wn.2d 627, 639, 708 P.2d 393 (1985)). "Once the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action."

---

[13] The parties do not dispute that Pope has a disability. Thus, we are concerned herein only with whether there was evidence sufficient to establish a dispute of material fact regarding whether Pope could perform the essential functions of her job and whether AHS provided her a reasonable accommodation.

Scrivener, 181 Wn.2d at 446 (citing Grimwood v. Univ. of Puget Sound, Inc., 110 Wn.2d 355, 363-64, 753 P.2d 517 (1988), abrogated on other grounds by Mikkelsen v Pub. Util. Dist. No. 1 of Kittitas County, 189 Wn.2d 516, 404 P.3d 464 (2017)). If the employer meets this burden, then the employee must "'produce sufficient evidence that [the employer's] alleged nondiscriminatory reason for [the employment action] was a pretext.'" Scrivener, 181 Wn.2d at 446 (second alteration in original) (quoting Hume v. Am. Disposal Co., 124 Wn.2d 656, 667, 880 P.2d 988 (1994)). "Evidence is sufficient to overcome summary judgment if it creates a genuine issue of material fact that the employer's articulated reason was a pretext for a discriminatory purpose." Scrivener, 181 Wn.2d at 446 (citing Hume, 124 Wn.2d at 668).

In determining whether job functions are essential, Washington courts have utilized criteria suggested by the federal Equal Employment Opportunity Commission:

> (1) the employer's judgment as to which functions are essential; (2) written job descriptions; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the employee to perform the function; (5) the terms of a collective bargaining agreement; (6) the work experience of past employees in the job; and (7) the current work experience of employees in similar jobs.

Dedman, 98 Wn. App. at 479 (citing 29 C.F.R. § 1630.2(n)(3)).

To determine whether an employee with a disability qualifies for a reasonable accommodation, SMC 14.04.030(C) requires that an impairment[14]

---

[14] An impairment is defined as including:

1. Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs),

must be known or shown through an interactive process to exist in fact and:

1. The impairment must have a substantially limiting effect upon the individual's ability to perform that individual's job, the individual's ability to apply or be considered for a job, or the individual's access to equal benefits, privileges, or terms or conditions of employment; or

2. The employee or domestic worker must have put the employer or hiring entity on notice of the existence of an impairment, and medical documentation must establish a reasonable likelihood that engaging in job functions without an accommodation would aggravate the impairment to the extent that it would create a substantially limiting effect.

"The employee bears the burden of giving the employer notice of the disability." Goodman v. Boeing Co., 127 Wn.2d 401, 408, 899 P.2d 1265 (1995) (citing Hume, 124 Wn.2d at 672). This notice requirement, however, does not require the employee to inform the employer of the full nature and extent of the disability. Goodman, 127 Wn.2d at 408. Once an employer is notified, it is "the employer's burden to take 'positive steps' to accommodate the employee's limitations," although the employee also retains a duty to cooperate with the employer's efforts by explaining the disability and qualifications. Goodman, 127 Wn.2d at 408. Reasonable accommodation "envisions an exchange between employer and employee where each seeks and shares information to achieve the best match between the employee's capabilities and available positions." Goodman, 127 Wn.2d at 408-09.

---

cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or

2. Any mental, developmental, traumatic, or psychological disorder, including but not limited to cognitive limitation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

SMC 14.04.030(B).

"To establish a prima facie case of retaliatory conduct, [an employee] must show that (1) she engaged in statutorily protected activity, (2) [the employer] took some adverse employment action against her, and (3) retaliation was a substantial factor behind the adverse employment action."[15] Wash. v. Boeing Co., 105 Wn. App. 1, 14, 19 P.3d 1041 (2000) (citing Delahunty v. Cahoon, 66 Wn. App. 829, 840-41, 832 P.2d 1378 (1992)).  A "substantial factor" must be a significant motivating factor, but need not be the sole factor, or even a determining factor, in the decision.  Scrivener, 181 Wn.2d at 444.

Herein, AHS first asserts that the City failed to establish a prima facie case of discrimination.  This is so, AHS asserts, because there is no dispute that (1) Pope was unable, due to her disability, to perform the essential functions of her job because she could not use the telephone clock in system utilized by AHS, and (2) Pope never requested a reasonable accommodation because she failed to provide medical proof of her disability.  We disagree.

AHS's assertion that Pope was unable to perform essential functions of her job presumes that properly utilizing the phone clock in system was an essential function of the job.[16]  But the record shows that the City presented

---

[15] This test applies to all types of retaliation claims in the employment context, and so because the prohibition against retaliation is the same under both chapter 14.04 SMC and former chapter 14.19 SMC (2014), and the retaliatory acts alleged are the same for both the retaliation claims herein, we perform a single analysis to determine whether there is a genuine dispute of material fact regarding whether AHS retaliated against Pope.  Such an analysis aligns with the hearing examiner's decision, which analyzed the retaliation claims under the different code sections as one claim for retaliation.

[16] The hearing examiner appeared to accept this presumption because the job description provided by AHS stated that filling out accurate time sheets was a major responsibility of the job.  While an employer's description of a position's duties is one piece of evidence that could be used to determine the essential functions of a job, it is not the only evidence a fact finder may consider.  Indeed, the fact finder may also consider the amount of time spent on the job performing the function, the consequences of not requiring the employee to perform the function, the terms of a collective bargaining agreement, the work experience of past employees in the job,

evidence disputing this and establishing that Pope was certified for her job and was capable of performing basic caregiving services such as doing household chores, laundry, cooking, and assisting clients in getting around and using the bathroom. Additionally, the City presented evidence showing that AHS did not implement a telephone clock in system until 2012 and that it allowed employees to use an alternative time sheet if necessary. Indeed, the City introduced evidence that Pope herself had utilized a paper time keeping system while working for AHS. This evidence, viewed in the light most favorable to the City, could persuade a reasonable trier of fact that the telephone clock in system was not an essential function of Pope's job and that she could perform the essential functions of her job.

Similarly, AHS's assertion that Pope never requested a reasonable accommodation is premised on the faulty argument that she had to provide certain medical proof of her disability to make such a request. This contention was flatly rejected by our Supreme Court in Goodman, which concluded that employers must take positive steps to address an employee's disability once it is notified of the existence of such a disability.[17] 127 Wn.2d at 408-09. The City

___

and the current work experience of employees in similar jobs. Dedman, 98 Wn. App. at 479. The hearing examiner herein improperly considered the written job description to be dispositive.

[17] AHS appears to assert that the standard is different when the employee works with vulnerable clients, requiring the employee to medically prove the disability before an accommodation is required. AHS does not cite to any authority that supports its assertion. Instead, in the cases cited by AHS, it is the employer's burden to establish that an employee poses a direct threat to the safety or health of other individuals in the employee's workplace. Echazabal v. Chevron USA, Inc., 336 F.3d 1023, 1027 (9th Cir. 2003). Echazabal notes that

> [b]efore excluding an individual from employment as a direct threat, an employer must demonstrate that it has made an "individualized assessment" of the employee's ability to perform the essential functions of the job, "based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence."

336 F.3d at 1027 (quoting 29 C.F.R. § 1630.2(r)).

presented evidence that Pope informed AHS of her disability and requested an accommodation pertaining to the telephone clock in system, that AHS did not respond to her request or provide any assistance with the telephone clock in system for several weeks, and that when assistance was finally provided it was only provided on a few occasions prior to her filing a complaint with SOCR. This evidence, viewed in the light most favorable to the City, could persuade a reasonable trier of fact that Pope requested, but did not receive, a reasonable accommodation from AHS.

The City met its burden to produce evidence supporting a prima facie case of discrimination. Thus, the burden properly shifted to AHS to produce nondiscriminatory reasons for its failure to accommodate Pope's disability. Scrivener, 181 Wn.2d at 446. Herein, AHS's only proffered explanation was that without certain medical proof of Pope's disability, it was not able to develop an accommodation. Not only is this explanation legally insufficient—as employers are required to take affirmative steps to accommodate a disability once they are notified of its existence even in the absence of medical proof, Goodman, 127 Wn.2d at 408-09—but such an explanation appears dubious in light of the fact that AHS never once requested Pope to submit to a fitness for duty medical examination and ignored Pope's medical provider's e-mail declaring her fit for work. Plainly, the City established a dispute of material fact regarding the question of whether AHS discriminated against Pope because of her disability.

---

The Echazabal court further noted that "an employer must gather 'substantial information' about an employee's work history and medical status" to make an individualized assessment. 336 F.3d at 1028. There is no evidence in the record herein to suggest that AHS obtained such information or completed such an individualized assessment.

21

AHS next asserts that it has a complete defense to discrimination claims under SMC 14.04.050(D) because Pope could not perform the essential functions of her job. However, because the City provided evidence of Pope's ability to perform the essential functions of her job, AHS has not established, as a matter of law, that SMC 14.04.050(D)'s exception for cases wherein an employee's disability prevents her or him from performing the job is applicable. Summary judgment premised on the defense set forth in SMC 14.04.050(D) was, therefore, improper.

Finally, AHS asserts that the City failed to establish a prima facie case of retaliation under both SMC 14.04.040 and former SMC 14.19.060 (2014) and that even if it had so established, AHS provided unchallenged evidence justifying its suspension of Pope and establishing that retaliation was not a substantial factor in the suspension. This is so, AHS asserts, because (1) a suspension to enable an employee to obtain medical authorization to work is never an adverse employment action—and therefore there was no dispute that Pope's suspension was not an adverse employment action—and (2) even if there was prima facie evidence of an adverse employment action, there was no evidence supporting an inference that the suspension was retaliatory because the suspension was intended to enable Pope to provide AHS with medical information about her disability so that it could develop a reasonable accommodation.[18]

_____

[18] AHS also appears to assert that it suspended Pope because of disciplinary issues, specifically that she failed to remember to clock in properly or show up to work as scheduled. Even if these considerations were part of the decision to suspend Pope—the parties disputed whether these disciplinary issues were merely a pretext—that does not establish that the request for an accommodation and the filing of complaints were not substantial factors in the decision. Additionally, it is odd for AHS to so assert because, by doing so, it is essentially admitting that it suspended Pope because of issues arising directly from her memory related disability.

22

AHS is incorrect that a medical suspension may never be an adverse employment action. See, e.g., Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 71-72, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006) (concluding that a medical suspension without pay was adverse employment action even when employee receives back pay at the end of the suspension). While a medical evaluation is not necessarily itself an adverse action, the accompanying suspension without pay certainly qualifies as adverse. See Burlington, 548 U.S. at 73 ("A reasonable employee facing the choice between retaining her job (and paycheck) and filing a discrimination complaint might well choose the former."). It is undisputed that AHS suspended Pope without pay and never allowed her to return to work. Such a suspension plainly constitutes an adverse employment action.[19]

AHS is also incorrect that its explanation for Pope's suspension—to allow her to obtain medical proof of the impacts of her disability and to be medically cleared to work—established that it was not retaliatory. As the City notes in its briefing, a fact finder could doubt AHS's proffered reason for suspending Pope because of the timing of the suspension, which occurred shortly after the filing of complaints with SOCR and SOLS, and because AHS never sought to have a doctor examine Pope during her suspension. The City therefore plainly

---

[19] Furthermore, it is disputed by the parties that AHS's suspension of Pope was actually for the purpose of enabling her to obtain medical information for AHS. Given that the City presented evidence that Pope's medical provider informed AHS that Pope was cleared to work and that AHS ignored this and yet declined to request Pope undergo an independent medical assessment, a trier of fact could reasonably conclude that AHS did not actually want to accommodate Pope. Thus, even if suspension to obtain medical clearance was not an adverse employment action, a disputed issue of fact would remain as to whether obtaining medical clearance to work was, in fact, the actual purpose of the suspension.

presented evidence to dispute the credibility of AHS's explanation for the suspension and such a dispute bars summary judgment on the retaliation claims.

The order of the superior court is affirmed.

_____
Dwyer, J.

WE CONCUR:

_____          _____
                                    Leach, J.